In re Ronald T. SPANN, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals.

No. 96–BG–1672.

District of Columbia Court of Appeals.

Argued Jan. 28, 1998.
Decided May 21, 1998.

Michael S. Frisch, Senior Assistant Bar Counsel, with whom Leonard H. Becker, Bar Counsel, and Julia L. Porter, Assistant Bar Counsel, were on the brief, for the Office of Bar Counsel.

Elizabeth J. Branda, Executive Attorney, for the Board on Professional Responsibility.

Ronald T. Spann, respondent, filed a brief pro se.

Before STEADMAN and REID, and GRAAE *, Associate Judges.

GRAAE, Associate Judge:

■ In this reciprocal discipline matter from Florida, the Board on Professional Responsibility ("Board") recommends the court impose a two-year suspension on Respondent, with a requirement that he demonstrate fitness to practice as a condition of reinstatement, rather than disbarment, as was imposed by the Supreme Court of Florida. The Board argues that Respondent's misconduct in Florida, if committed here, would not subject him to disbarment in the District of Columbia, and, thus, the "substantially different discipline" exception to imposing identical discipline applies. Bar Counsel disagrees, urging the court to impose reciprocal disbarment. We agree with Bar Counsel that imposition of identical discipline is appropriate.

**I.**

The applicable Bar rule provides that reciprocal discipline shall be imposed unless the attorney can show by clear and convincing evidence that his case comes within one of the five exceptions. D.C. Bar R. XI,

* Sitting by designation pursuant to D.C.Code § 11–707(a) (1995).

§ 11(c).[1] *In re Gardner,* 650 A.2d 693, 695 (D.C.1994); *In re Zilberberg,* 612 A.2d 832, 834 (D.C.1992). We have stated that "[t]he rule thus creates a rebuttable presumption that the discipline will be the same in the District of Columbia as it was in the original disciplining jurisdiction." *Zilberberg,* 612 A.2d at 834.

 In this case, Respondent after notice did not file a timely opposition to Bar Counsel's stated intent to seek reciprocal disbarment, pursuant to our temporary suspension and show cause Order issued on December 13, 1996, Rule XI, § 11(d) and Bar Rule 8.2. Indeed, he did not oppose before the Board the proposed imposition of identical discipline and otherwise took no part in the proceedings before the Board, other than to file the affidavits entitling him to retroactive treatment. See note 3, *infra.* Thus, Respondent waived his right to show cause why he should not be subject to identical discipline.

Despite the plain language of Rule XI, § 11(c) placing the burden on Respondent to prove by clear and convincing evidence that a lesser sanction is warranted, Rule XI, § 11(f)(2) grants the court independent authority to impose different discipline if it finds "on the face of the record ... by clear and convincing evidence" that an exception applies.[2] Pursuant to the same authority, the Board can recommend a different sanction where it believes an exception applies. *Gardner,* 650 A.2d at 696.

## II.

The Board's argument for a lesser sanction is premised on its conclusion that the Florida discipline "was primarily based on Respondent's conduct in authorizing forged signatures and his subsequent knowing notarization of those signatures." Perhaps Respondent might not have been disbarred in the District of Columbia if this were the full extent of his misconduct. However, we think Florida's disbarment order was based on far more, including a lengthy pattern of dishonesty and misrepresentation and a prior history of discipline.

Respondent was found guilty of multiple violations in his representation of five clients between 1988 and 1993. In 1988, he represented Steven Amburgey in a workers' compensation case. His agreement with Amburgey authorized him to hold some of his client's compensation benefits in trust and to use them as a fund for compensation, provided he obtain court approval of all attorneys' fees and costs. Between November 1988 and June 1989, Respondent withdrew more than $1,600 in fees and costs without court approval. Later recognizing that his withdrawals of funds were improper, Respondent opened a trust account and deposited all but $171.14 of the amount he had improperly disbursed to himself. He thereupon petitioned the court for permission to disburse all the funds he had deposited in the account, but without disclosing his previous unapproved withdrawals. The Florida Supreme Court held this to be a misrepresentation to the court. In addition, the Court found Respondent had committed numerous other ethical breaches in his representation of Mr. Amburgey, violating a total of twenty provisions of the Rules Regulating The Florida Bar (Florida Rules).

---

1. D.C. Bar R. XI, § 11(c) provides: Reciprocal discipline shall be imposed unless the attorney demonstrates, by clear and convincing evidence that: (1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or (2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on the subject; or (3) The imposition of the same discipline by the Court would result in grave injustice; or (4) The misconduct established warrants substantially different discipline in the District of Columbia; or (5) The misconduct does not constitute misconduct in the District of Columbia.

2. D.C. Bar R. XI, § 11(f)(2) provides in relevant part:

 [T]he Court shall impose the identical discipline unless the attorney demonstrates, or the Court finds on the face of the record on which the discipline is predicated, by clear and convincing evidence, that one or more of the grounds set forth in subsection (b) of this section exists.

 The Court notes that the rule's reference to "subsection(b)" is clearly in error. It should read "subsection (c)."

In August 1988, Respondent entered into a settlement agreement with Southern Bell on behalf of his client Leonard Champagne. Unable to locate his client and without authorization to accept the settlement, Respondent instructed one of his non-lawyer employees to forge Champagne's signature on the release forms and then notarized the signatures himself. When Southern Bell learned of the forgeries, they demanded that Respondent secure judicial approval for his actions. He thereupon filed a petition for an order to deposit settlement funds into the court registry, but without disclosing that the notarized signatures were forged. This was deemed to be a fraud on the Court. Respondent was also found to have entered into an improper retainer agreement with Champagne that provided for a $1,000 non-refundable retainer fee and a forty percent contingent fee on any "award under $1 million after a lawsuit is filed." Although Respondent filed no lawsuit, he calculated his attorneys fees as forty percent of the pre-tax settlement with Southern Bell and took $5,206 from Champagne's $7,622.32 post-tax settlement. In all, the Court found that Respondent had violated fourteen of the Florida Rules in his representation of Mr. Champagne.

In his 1991 representation of Edward Jenkins, Respondent was found to have entered into an illegal contingent fee agreement because it provided for payment at an hourly rate for services rendered if there were no settlement or final judgment. As to the Bar grievance by Craig Reese, Respondent was found to have charged for legal services without a retainer agreement, revealed confidential information about Reese's case to third parties, threatened Reese with collection if he did not withdraw his grievance, and allowed non-lawyer employees to sign letters "for the firm" without disclosing their non-lawyer status.

Finally, Respondent was found to have violated rules pertaining to unauthorized practice of law and supervision of staff in having his non-lawyer employees write letters to a client, advising the client of his withdrawal and of the statute of limitations applicable to its claims.

The Florida Supreme Court made the following observations about this extensive record of misconduct:

> Disbarment is an appropriate punishment where, as here, multiple and serious disciplinary offenses have occurred. Authorizing the forging of a signature and the subsequent notarization of a signature, knowing it to be a forgery, constitutes serious misconduct.

> Adding the severity and number of violations here and the lengthy period of time over which these violations occurred, we find the referee's recommendation of consecutive suspensions to be inadequate. We also note that Spann, who has close to twenty years of legal experience, continues to maintain that he has done nothing wrong. Thus, we conclude that disbarment is the most appropriate punishment.

We conclude from the above-quoted language that the Florida Supreme Court did not rest its decision on just the forged signatures in the Champagne case, but on the entire history of Respondent's misconduct.

### III.

In deciding on appropriate discipline, we review an attorney's violations in light of all relevant factors, including (1) the nature of the violations, (2) the mitigating and aggravating circumstances, (3) the need to protect the public, the court, and the legal profession, and (4) the moral fitness of the attorney. *In re Goffe*, 641 A.2d 458, 464 (D.C.1994). Considering Respondent's violations in light of these factors, one is hard pressed to conclude he would not have been disbarred in the District of Columbia.

As already set out above, in addition to Respondent's forgery and notarization of documents he filed in court proceedings, his numerous other ethical violations, ranging from breaches of trust to charging illegal fees, the absence of any mitigating factors, and his complete lack of remorse reveal an individual without regard for his obligations to the public, the courts, and his profession. In sum, disbarment is well within the range of sanctions that could have been imposed on Respondent had his misconduct originated in

the District of Columbia. We see no reason why we should not impose the same sanction as Florida.

## IV.

We add a few words about the procedures followed here, which, in our judgment, unnecessarily complicated a simple reciprocal matter. Despite the absence of an objection to the proposed discipline, the Board engaged in the near-equivalent of a de novo review of the Florida proceeding, not unlike the review it would conduct on a hearing committee's recommendation in an original discipline proceeding, but without the participation of counsel and the advantage of access to exhibits, transcripts, and other records.

▪ It should be remembered that the attorney in the usual reciprocal discipline case has already had an opportunity for a full hearing in the originating jurisdiction. That certainly was true for this Respondent. More significantly, there is a strong presumption this jurisdiction will impose discipline identical to that imposed by another. The rule itself states that "reciprocal discipline *shall* be imposed unless the *attorney* demonstrates by clear and convincing evidence" that one of the five exceptions applies. Here, Respondent did not object to the imposition of identical reciprocal discipline—indeed, he took no part in the proceedings.

▪ Given this posture, we think the role of the Board should be a limited one. The most the Board should consider itself obliged to do in cases where neither Bar Counsel nor the attorney opposes imposition of identical discipline is to review the foreign proceeding sufficiently to satisfy itself that no obvious miscarriage of justice would result in the imposition of identical discipline—a situation that we anticipate would rarely, if ever, present itself. Cf. *In re Goldsborough*, 654 A.2d 1285, 1288 (D.C.1995) (court's deference to Board recommendation becomes even greater when unopposed by attorney). We recognize that the Board's review of the instant

case was likely prompted by our observation in *Gardner, supra*, 650 A.2d at 696, that it is "appropriate" for the Board to consider whether any of the exceptions apply. But such an "appropriate" review in an uncontested case need not exceed that which we have described above.

It is therefore ORDERED that Respondent, Ronald T. Spann, be disbarred from the practice of law in the District of Columbia, effective August 17, 1996, the date of Respondent's disbarment in Florida.[3]

*So ordered.*

---

**3.** Respondent timely filed affidavits in accordance with D.C. Bar R. XI, § 14 and with *In re Goldberg*, 460 A.2d 982 (D.C.1983), thereby making him eligible for such retroactive treatment in a reciprocal discipline case. *See In re Slosberg,*

650 A.2d 1329 (D.C.1994). Bar Counsel did not take exception to the recommendation of the Board that the reciprocal discipline imposed be retroactive.