**In re T. Clarence HARPER, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 99–BG–1359.**

District of Columbia Court of Appeals.

Argued Oct. 22, 2001.

Decided Nov. 8, 2001.

Melvin G. Bergman, Beltsville, MD, for respondent.

Julia L. Porter, Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel, and Michael S. Frisch, Senior Assistant Bar Counsel at the time the briefs were filed, were on the brief, for the Office of Bar Counsel.

Before STEADMAN and FARRELL, Associate Judges, and PRYOR, Senior Judge.

FARRELL, Associate Judge:

The Board on Professional Responsibility has recommended that respondent be

disbarred as reciprocal discipline for his disbarment by the Court of Appeals of Maryland. The "most significant and[, indeed, the] controlling factor" in the Board's recommendation is that respondent took no part in the proceeding before the Board, a fact that we have held restricts the Board's consideration of the propriety of imposing reciprocal discipline. *See In re Spann*, 711 A.2d 1262, 1265 (D.C.1998). In this court, respondent urges us to excuse his failure to oppose reciprocal disbarment at the Board level as the result of good faith confusion on his part about the process leading to a Board recommendation of reciprocal discipline. And as evidence of the injustice he believes a conclusion that he substantially defaulted his right to oppose that discipline would cause him, he points to the misgivings the Board itself had as to whether disbarment in the District would have been commensurate with his misconduct, even as a reciprocal matter, had he seasonably opposed the discipline.

Notwithstanding these arguments, respondent's failure to contest Bar Counsel's recommendation of reciprocal disbarment to the Board stemmed from his disregard of this court's order explicitly stating the time within which an opposition had to be filed. Nothing in the rules governing reciprocal discipline rendered that notice ambiguous, and our decisions preclude the leniency respondent asks us to adopt for a claimed unintentional but inexcusable bypass of the procedure for opposing reciprocal discipline. Under the standard which the Board correctly followed, "no obvious miscarriage of justice would result in the imposition of identical discipline" for respondent's conduct in Maryland, *Spann,*

711 A.2d at 1265, and we therefore adopt the Board's recommendation.

## I. Background

### A.

Respondent was disbarred by Maryland for the unauthorized practice of law and related misconduct.[1] As accurately summarized by the Board, the facts are that in early 1995 respondent agreed to accept cases from two former Maryland attorneys, Fred Kolodner and Burton M. Greenstein, who had practiced law in Baltimore City before being disbarred. Under the terms of the agreement, the wife of Fred Kolodner, a principal in a business enterprise that provided physical therapy and treatment facilities for automobile accident and workers' compensation claimants, began referring the clients and files of the business to respondent. Since respondent was not licensed to practice law in Maryland, in early 1995 he engaged Versteal Kemp, an attorney who was a member of the Maryland bar, to help with the referred cases. Together they opened the office of Harper & Kemp in Baltimore City. Before the start of their business relationship and throughout its existence, respondent also practiced from an office on Georgia Avenue in the District of Columbia, where he primarily handled personal injury cases. Kemp was primarily a criminal law practitioner.

In May 1995, respondent signed a one-year lease for an office for Harper & Kemp; the lease was extended on a month-to-month basis until the office was closed sometime in 1997. The firm's stationery reflected the fact that respondent was a "Member of the D.C., and Maryland Federal Bars," while Kemp was a "Mem-

---

1. Under Maryland law, " '[d]isbarment' when applied to an attorney not admitted by the Court of Appeals to practice law means permanent exclusion from exercising in any manner the privilege of practicing law in this State." MARYLAND RULES OF PRACTICE AND PROCEDURE, TITLE 16, CHAPTER 700, *"Discipline and Inactive Status of Attorneys,"* Rule 16–701(g).

ber of Maryland State and Federal Bars." Respondent signed retainer agreements between the firm's personal injury clients and Harper & Kemp. For some time after the office first opened, he and Kemp alternated in covering the office. After a while, Kemp stopped covering the office and coverage was provided solely by respondent. He established escrow and operating accounts on which both he and Kemp were authorized signators, although all of the deposits and withdrawals associated with the accounts were made by respondent. At the suggestion of Deborah Kolodner, Harper & Kemp employed a person called "Mitchell" to put the case files in order. Mitchell did not use his real name, Joseph Somerville, because he had previously been the subject of considerable bad publicity due to his connection with an attorney who had been disbarred. Somerville worked at Harper & Kemp for a little less than a year. During that time, he worked daily with respondent and saw little of Kemp, who tended to come to the office in the evening and leave notes for Mitchell concerning Kemp's cases.

Respondent came to the attention of the Maryland Bar Counsel when several clients filed complaints against Harper & Kemp concerning the handling of their cases. The first client, Brenda Foster, claimed that respondent solicited the representation of Brenda Foster on behalf of her minor daughter, Linnea Anderson, without the supervision of Kemp. The second client, Frances Bonner, claimed that respondent agreed to a settlement in her case without obtaining her prior authorization or informing her that she was free to reject the settlement check that respondent tendered. A third client, Frances Bonner's daughter, Kimberly Bonner, alleged that respondent failed to act with reasonable promptness and failed to keep her informed about her case.

Respondent acknowledged to the Maryland Bar Counsel's investigator that he dealt with most of the clients in Baltimore, that most of the files in the Baltimore office were his cases, and that Kemp had nothing to do with them. The bank records of Harper & Kemp show that between May 1995 and September 1996 respondent drew fifty-five checks totaling $110,353.93 that were payable to clients as distribution of settlement proceeds from the escrow account. He also drew $82,241.97 in checks on the escrow account payable to cash, to himself, or to Harper & Kemp.

The Attorney Grievance Commission of Maryland filed petitions for disciplinary action against respondent and Kemp. After a joint trial in the Circuit Court, respondent was found to have violated five Maryland disciplinary rules: Rule 1.3 for his failure to act with reasonable diligence and promptness in representing a client; Rule 1.4 for his failure to keep his client reasonably informed; section 10–601 of the Maryland Code for practicing law without a license, a misdemeanor under Maryland law; Rule 8.4(b) for committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer; and Rule 8.4(d) for engaging in conduct prejudicial to the administration of justice.

Besides the violations found by the Circuit Court, the Court of Appeals agreed with Maryland Bar Counsel that respondent had violated Rule 16–609 by repeatedly drawing checks on an escrow account made payable to "cash," Rule 7.5 by soliciting employment via the false impression that he was licensed in Maryland, and Rule 7.1 by materially misleading a client as to his ability to settle her claim. Concerning the primary charge of unauthorized practice of law, the Court recognized that respondent was permitted to practice

law in the District of Columbia and had associated himself with an attorney (Kemp) who was authorized to practice in Maryland.[2] Nonetheless, the Court determined that his unauthorized practice of law in Maryland required disbarment, because it

> was deliberate and persistent. He set up an office for the general practice of law in Baltimore City in order to wring whatever value he could out of the inventory of pending cases of a disbarred lawyer who had practiced in Baltimore City. There is no reasonable basis on which Harper could have thought that this conduct was lawful. His motive in creating Harper & Kemp was greed. There is no mitigation. Other unadmitted attorneys must be deterred from attempting to practice law in violation of the statutory prohibition against unauthorized practice.[3]

### B.

On October 21, 1999, Bar Counsel in the District of Columbia informed this court of the Maryland disbarment order. The next day, the Board informed respondent by letter of this jurisdiction's rules governing reciprocal discipline, in particular Board Rule 8.2 which affords an attorney "an opportunity to respond to Bar Counsel's statement as to whether reciprocal discipline should be imposed." On October 26, this court issued the standard order in such circumstances, with a copy to respondent, informing him of receipt of the Maryland disbarment order and suspending him from practice here pending final disposition of the same matter in this jurisdiction.

The order directed Bar Counsel to inform the Board within 30 days "of his position regarding reciprocal discipline," and explained that "[t]hereafter, respondent shall show cause before the Board on Professional Responsibility, if cause there be, within 10 days why identical, greater or lesser discipline should not be imposed in the District of Columbia."

On November 23, 1999, Bar Counsel recommended to the Board in writing that reciprocal discipline be imposed. Citing the presumption of D.C. Bar R. XI, § 11(c) in favor of reciprocal discipline, Bar Counsel asserted that none of the enumerated exceptions applied and that disbarment fell within the range of sanctions that could be imposed as original discipline here, because "[r]espondent's misconduct involve[d] an extensive pattern and practice of unauthorized law over a two-year period, violations of record-keeping requirements relating to the operation of his escrow account, and improper solicitation of professional employment by creating the false impression that he was licensed in Maryland." Respondent filed no opposition to Bar Counsel's recommendation, neither within the ten days specified by this court's order nor in the subsequent thirteen months during which the Board had the recommendation under advisement. On December 12, 2000, the Board issued its recommendation to the court for reciprocal discipline.

### II. Discussion

■ Reciprocal (*i.e.*, identical) discipline is imposed unless the attorney demon-

2. Maryland Bar Counsel's theory, which the Court of Appeals accepted, was that a lawyer admitted in another jurisdiction may not practice in Maryland in partnership with a Maryland attorney out of an office maintained by the partnership in Maryland, unless the Maryland attorney supervises the work of the unadmitted lawyer—which Kemp had not done.

3. Kemp's "role in the scheme," the Court found, was "to furnish cover for Harper's unauthorized practice."

strates by clear and convincing evidence that one of the exceptions set forth in D.C. Bar Rule XI, § 11(c) applies. *See In re Gardner*, 650 A.2d 693, 695 (D.C.1994). Several of our prior decisions, chiefly *Spann, supra,* have dealt with the effect of the attorney's failure to contest reciprocal discipline before the Board. In *Spann*, as in this case, the respondent "did not oppose before the Board the proposed imposition of identical discipline and otherwise took no part in the proceedings before the Board." 711 A.2d at 1263.[4] In those circumstances, we held,

> [T]he role of the Board should be a limited one. The most the Board should consider itself obliged to do in cases where neither Bar Counsel nor the attorney opposes imposition of identical discipline is to review the foreign proceeding sufficiently to satisfy itself that no obvious miscarriage of justice would result in the imposition of identical discipline—a situation that we anticipate would rarely, if ever, present itself.

*Id.* at 1265. In thus attaching significant consequences to the attorney's failure to oppose reciprocal discipline before the Board, the court in *Spann* was not writing on a clean slate. In *In re Sheridan*, 680 A.2d 439 (D.C.1996), the court had similarly concluded that the "[r]espondent failed to show cause before the Board that any of the[ ] conditions [disfavoring reciprocal discipline] applied," and that this failure "[was] an effective default on the issue of whether such cause existed." *Id.* at 440. And in *In re Goldsborough*, 654 A.2d 1285, 1287 (D.C.1995), we explained that the court had "issued an order requiring

Goldsborough to show cause, if any there be, why reciprocal discipline should not be imposed. By failing even to respond to that order, Goldsborough has effectively defaulted on the issue whether such cause exists." *See also In re Berger*, 737 A.2d 1033, 1044–45 (D.C.1999).

Despite these precedents, respondent argues that his failure was inadvertent and should be excused because he received conflicting signals from this court's October 26 order. Specifically, while the order directed him to show cause within ten days of a recommendation of reciprocal discipline by Bar Counsel, it went on to instruct the Board "to recommend promptly thereafter [*i.e.*, after receipt of his response] to this court whether identical, greater or lesser discipline should be imposed as reciprocal discipline." That instruction lulled him, respondent says, into thinking that no response was necessary until the Board "declared its intention as to whether it would proceed as a reciprocal matter or by way of an original complaint" (Br. for Resp. at 6). Moreover, the Board's Rule 8.2, brought to his attention by the Board, states that the respondent "*may* file a response to Bar Counsel's statement concerning reciprocal discipline" (emphasis added), which he again says induced him to believe that filing a response within ten days was merely permissive and would not be enforced under pain of default.

 None of this reasoning, however, excuses respondent's disregard of the court's explicit order to show cause, if any, within a time certain after Bar Counsel's recommendation was made.[5] Nor does it

---

4. All Spann filed with the Board, as the court noted, was the Rule XI, § 14 affidavit entitling him to retroactive treatment in the imposition of discipline. *See* 711 A.2d at 1263. Respondent also purported to file that affida-

vit, a matter we discuss at the conclusion of this opinion.

5. At oral argument respondent asserted that the court's standard show cause order giving him ten days to respond to Bar Counsel's

excuse his waiting the entire thirteen months during which the Board had the recommendation under advisement without inquiring whether his participation in the proceeding was expected or could avail him. Treating an opposition filed for the first time in this court as equivalent to a timely response to the show cause order thwarts the operation of a disciplinary system that depends heavily on the Board's expertise in making recommendations. And that is true even though in reciprocal discipline cases "we are not *required* to accord [the Board's recommendation] the deference we normally would in a nonreciprocal discipline proceeding." *In re Reid*, 540 A.2d 754, 758 (D.C.1988) (emphasis in original). The Board, after all, is not limited to either recommending identical discipline or proceeding de novo; *id.*; it may recommend different discipline and in that connection may seek the aid of a hearing committee. *See* D.C. Bar R. XI, § 11(g)(1) & (2). The Board's role is thus integral to this court's determination of the proper discipline in reciprocal cases. Our decisions cited above confirm that role and preclude the sort of leniency respondent urges for his failure to participate at the Board level.

Respondent nonetheless argues that Rule XI, § 11(f)(2) affords him a "safety valve" against application of the *Spann* rule by affirming that this court is the ultimate arbiter of whether reciprocal discipline should be imposed. *See id.* ("If *the Court* determines that the identical discipline should not be imposed, it shall enter such order as it deems appropriate") (emphasis added). In effect, he argues that the court is free to disregard an attorney's silence before the Board even if the Board is not, a proposition we reject for the reason already stated. Accepting it would make of the Board proceedings a sort of " 'tryout on the road,' " *Wainwright v. Sykes*, 433 U.S. 72, 90, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), rather than an integral part of the imposition of discipline by the court.[6] Consequently, the *Spann* test of "an obvious miscarriage of justice" defines the scope of review which both the Board and the court apply to foreign discipline not opposed at the Board level.

Ultimately, respondent's opposition to the Board's recommendation rests on the misgivings which the Board itself expressed as to whether disbarment in this jurisdiction—where respondent *is* li-

statement conflicts with D.C. Bar Rule XI, § 11(d), which requires the court pending final disposition of a reciprocal proceeding to "direct[ ] the attorney to show cause within *thirty days from the date of the order* why the identical discipline should not be imposed" (emphasis added). There is no irreconcilable conflict. The court's practice, reflected in the order issued here, merely requires Bar Counsel to state her position respecting discipline *before* the attorney is obliged to show cause, the obvious purpose being to apprise the attorney whether Bar Counsel will advocate for the same, or for greater or lesser, discipline. In a sense the court's practice lengthens the time in which the attorney may respond by giving him the aggregate of Bar Counsel's thirty days and ten days thereafter in which to oppose identical discipline; moreover, if the ten days is too brief, the Board "for good

cause shown may extend the time for filing a response for a period not to exceed thirty days." Rule XI, § 11(d) (last sentence).

6. The fact that D.C. Bar Rule XI, § 11(e) gives the attorney thirty days after service of the Board's recommendation to file an opposition with the court says nothing about the proper effect of his failure to contest reciprocal discipline before the Board. And respondent's case does not require us to consider the situation he hypothesized at oral argument in which the Board, without a corresponding recommendation by Bar Counsel, recommends *greater* discipline than that imposed by the other jurisdiction—so that, in effect, the attorney's first opportunity to oppose that recommendation is by an opposition filed in this court.

censed—is justified for his violation of another state's ban on unauthorized practice. The Board cited to its report adopted by the court in *In re Spiegelman*, 694 A.2d 59 (D.C.1997), where on facts similar to these the Board had reasoned that "[t]he District of Columbia Court does not have the same interest [as Maryland] in protecting itself and the District's citizens from *any* practice by [r]espondent," and that consequently "[t]o impose disbarment here [reciprocally] because the Maryland Court had the added motive of protecting itself from unauthorized practice would work a grave injustice." *Id.* at 62 (emphasis in original). The *Spiegelman* Board therefore recommended a one-year suspension in the District instead, and because the court accepted the recommendation, respondent argues that a similar refusal to impose identical discipline is warranted here.

Two critical features separate this case from *Spiegelman*, however. First, although we adopted the Board's recommendation there, we did so "largely because Bar Counsel ha[d] not urged a more severe sanction upon us, and because of the very limited precedential value of such uncontested impositions of discipline." *Id.* at 60 n. 1. In this case, Bar Counsel from the beginning has urged reciprocal disbarment. Equally important is that the Board in this case did not see disbarment of respondent on the basis of the Maryland discipline as yielding an injustice. Although the Board did not "foreclose the opportunity of a *future* respondent who is disciplined for engaging in the unauthorized practice of law in another jurisdiction to argue that the imposition of reciprocal discipline in the District might work a grave injustice under a certain set of circumstances" (emphasis added), it did not find the *Spann* test of an obvious miscarriage of justice met here, nor do we. Practicing law without a license in violation of a state statute is serious misconduct whether or not the attorney is licensed to practice elsewhere, including in the District. And respondent's unauthorized practice, in addition to the other misconduct found, was not isolated or accidental. As the Maryland Court of Appeals explained, it involved the "deliberate and persistent" use of an office he set up in Baltimore with a Maryland lawyer (and a pseudonymous assistant) "furnish[ing] cover," and false representations that he was licensed to practice in Maryland, all with the purpose "to wring whatever value he could out of the inventory of pending cases of a disbarred lawyer." Moreover, the District's interest in discipline is heightened because he used his license to practice in the District to deceive potential clients about his authority to practice elsewhere. Under *Spann*, there is no miscarriage of justice in subjecting respondent to the same discipline imposed by Maryland.

Accordingly, respondent is hereby disbarred from the practice of law in the District of Columbia. On November 18, 1999, respondent filed an affidavit which purported to comply with D.C. Bar Rule XI, § 14(g), but which plainly does not. Unless he has corrected the deficiency in the meantime, the disbarment will therefore begin when respondent files an affidavit meeting all the requirements of the rule. *See* Rule XI, § 16(c). In the meantime, he remains suspended from the practice of law.

*So ordered.*