In re Bradford J. BARNEYS, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 440281).

No. 02–BG–1218.

District of Columbia Court of Appeals.

Argued Oct. 26, 2004.

Decided Nov. 24, 2004.

---

1. *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959).

James T. Maloney, for respondent.

H. Clay Smith, III, Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before SCHWELB, FARRELL, and WASHINGTON, Associate Judges.

FARRELL, Associate Judge:

The Board on Professional Responsibility (the Board) recommends imposition of reciprocal discipline on respondent (Barneys) in the form of disbarment, based upon a decision of the Court of Appeals of Maryland unconditionally excluding Barneys "from the admission to or exercise of any privilege to practice law in [Maryland]." Maryland Rule 16–701(e); see Attorney Grievance Comm'n of Maryland v. Barneys, 370 Md. 566, 805 A.2d 1040 (2002) (Barneys I ). Having made no appearance until now in these reciprocal discipline proceedings, Barneys argues for the first time that he may not be disciplined reciprocally in the circumstances of this case and that, in any event, the most he should receive is a nine-month suspension (combined with a fitness requirement) rather than disbarment—the latter a sanction, he contends, that is "significantly greater" than the exclusion from practice imposed by Maryland. We reject these arguments and accept the Board's recommendation.

## I.

Barneys, a member of the Bars of New York, Connecticut, and the District of Columbia, opened an office in August 1996 at a Langley Park, Maryland address. His letterhead and business cards used the name "Law Offices of Bradford J. Barneys, P.C." without noting any jurisdictional limitation on the practice. From August 1996 through 1998, Barneys practiced from that office. During this time, he entered an appearance as counsel and otherwise represented clients in at least five cases in the District Court of Maryland sitting in Prince George's County and the Circuit Court for Prince George's County, when he was neither admitted to the Maryland Bar nor admitted specially by the court.

In one case in which Barneys appeared, State of Maryland v. Sanchez, CT980986X, he contacted Gates Bail Bonds ("Gates") to arrange for a $150,000 bond for his client. He led Gates to believe that he represented Mr. Sanchez in a worker's compensation matter in which settlement funds were expected within thirty days, and promised to pay Gates $15,000 from the anticipated settlement for the bond. He provided Gates with a signed document titled "Assignment of Settlement Proceeds" that promised "to observe all terms of [the assignment agreement] and ... to withhold such funds from any settlement, judgment or verdict as may be necessary to adequately protect Gates Bail Bonds." The document was signed by Barneys and purportedly by Sanchez. In fact, Sanchez had not signed the document and Barneys did not represent him in a worker's compensation case; Sanchez had such a case

but he was represented in it by another attorney who was not associated with Barneys. Barneys did not inform the other attorney of the assignment, and when the other attorney subsequently disbursed to Sanchez his share of the settlement funds, he did so without giving notice to Gates. When Sanchez later failed to appear for trial, the bond posted by Gates was forfeited.

Gates, through Deborah Gates, filed a complaint against Barneys with the Attorney Grievance Commission of Maryland. On November 19, 1998, a Commission investigator found a lobby sign describing Barneys as an "attorney at law" and a law office sign in Barneys' name outside his suite in Langley Park, Maryland. In response to a letter from the Attorney Grievance Commission informing him of the Gates' complaint and threatening to seek an injunction unless he closed his Maryland office, Barneys agreed to close his practice there in a letter dated December 12, 1998. The suite sign was removed when the investigator made a return visit on December 28, 1998. On January 22, 1999, a lobby sign had not yet been removed, but Barneys' business cards were no longer in open view.

Barneys admitted to the investigator that he had engaged in the unauthorized practice of law in Sanchez's case, but he initially denied representing any other clients in Maryland. The Maryland hearing judge subsequently concluded that Barneys had represented clients in at least fives cases in the District Court of Maryland sitting in Prince George's County and the Circuit Court for Prince George's County.

Previously, in May of 1997, Barneys had filed a petition for admission to the Maryland Bar as an out-of-state attorney. The Maryland Court of Appeals found that "[t]he premise of that application was that, although he resided in Maryland, he practiced law in the District of Columbia at that time." *See Barneys I,* 805 A.2d at 1042 n. 11.

## II.

Maryland Bar Counsel filed a petition for disciplinary action charging Barneys with misconduct, as defined by Maryland Rule 16–701(k), in connection with his alleged unauthorized practice of law in Maryland, and alleging a violation of the Business Occupations and Professions Article of Maryland Code §§ 10–601 and 10–602 and the following Maryland Rules of Professional Conduct: 5.5(a) (unauthorized practice of law); 7.5(a), (b), and (d) (firm names and letterheads); 4.1 (truthfulness in statements to others); 8.1(a) (bar admission and disciplinary matters); and 8.4(b), (c) and (d) (misconduct).

Following a hearing before a judge of the Circuit Court for Prince George's County, the judge made findings of fact and concluded that Barneys had committed each of the charged violations, including that he engaged in the practice of law in Maryland during 1997 and 1998 without being admitted to the Maryland Bar and that while his Maryland Bar application was pending, he entered his appearance as counsel and otherwise represented clients in at least five cases in the District Court or Circuit Court of Maryland. The judge recommended that a sanction of disbarment be imposed. In *Barneys I, supra,* the Maryland Court of Appeals upheld the findings of the hearing judge and disbarred Barneys.

On November 4, 2002, Bar Counsel for the District of Columbia sent a certified copy of the Maryland Court order to this court pursuant to D.C. Bar R. XI, § 11(b). The Board also sent a notice to Barneys at his address last listed with the District of

Columbia Bar, informing him of this proceeding and notifying him that the Board could recommend a sanction different from that imposed in Maryland, that is, either a greater or lesser sanction. *See In re Drury,* 638 A.2d 60 (D.C.1994). On November 13, 2002, this court suspended Barneys pursuant to D.C. Bar R. XI, § 11(d), directed Bar Counsel to inform the Board of her position regarding reciprocal discipline, and ordered Barneys to show cause thereafter before the Board why identical, greater, or lesser discipline should not be imposed in the District. On December 13, 2002, Bar Counsel filed a statement arguing that none of the exceptions set forth in D.C. Bar R. XI, § 11(c) applied and urging the Board to recommend reciprocal discipline of disbarment. A copy of the statement of Bar Counsel was served by mail on Barneys at his primary address listed with the D.C. Bar. Barneys did not respond to the statement of Bar Counsel and did not otherwise participate in the proceedings before the Board. The Board now recommends disbarment.

## III.

■ We have repeatedly held that "an attorney waives the right to contest the imposition of reciprocal discipline when he or she does not oppose the proposed discipline before the Board or fails to respond to the court's show cause order." *In re Holdmann,* 834 A.2d 887, 889 (D.C.2003); *In re Harper,* 785 A.2d 311, 316 (D.C. 2001). In such circumstances, reciprocal discipline will be imposed unless doing so would lead to an "obvious miscarriage of justice." *In re Spann,* 711 A.2d 1262, 1265 (D.C.1998); *Holdmann,* 834 A.2d at 890 n. 3. As Barneys failed to respond to the show cause order or participate in the proceedings before the Board, he may not challenge the imposition of reciprocal disbarment unless he can meet the "demand-ing" miscarriage of justice standard. *Holdmann,* 834 A.2d at 890 n. 3.

Barneys argues first, however, that he should not have to meet that standard because the Board lacked jurisdiction—what amounts to non-waivable subject matter jurisdiction—to discipline him reciprocally for unauthorized practice in Maryland. The argument appears to turn on the fact that, whereas in Maryland an attorney not a member of the state's Bar who engages in unauthorized practice there may be disciplined as an attorney (*i.e.,* by sanctions up to "disbarment"), the District of Columbia proceeds against such conduct—by anyone not licensed here, including a lawyer—through the court's Committee on Unauthorized Practice and court-imposed sanctions such as contempt, civil or criminal. Thus, Barneys asserts, his unauthorized practice would not be treated as "misconduct" by an attorney in this jurisdiction, hence was not reachable by reciprocal discipline. *See* D.C. Bar R. XI, § 11(c) ("Reciprocal discipline shall be imposed unless the attorney demonstrates ... that: ... (5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.").

■ This argument is unpersuasive. It is not, first of all, a jurisdictional one; rather it merely asserts an exception to Rule XI's presumptive requirement that reciprocal discipline be imposed. To preserve that argument, Barneys had to present it to the Board, which he failed to do. *Holdmann, supra.* In any case, Barneys' actions in Maryland *were* misconduct within the meaning of this jurisdiction's ethical rules. *See* Rule 5.5 of the District of Columbia Rules of Professional Conduct ("A lawyer shall not: (a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction ...."). As a lawyer admitted to practice in this jurisdiction, Barneys "is

subject to the disciplinary authority of this jurisdiction, regardless of where [his] conduct occur[red]." Rule 8.5(a).[1] Nothing in D.C. Bar Rule XI or any ethical rule he cites limits that jurisdiction, as he contends, to the initiation of an original disciplinary proceeding and not the imposition of reciprocal discipline.

There remains the question, then, of whether reciprocal disbarment of Barneys would amount to an "obvious miscarriage of justice." *Spann, supra.* It arguably would do so if disbarment by Maryland of non-admitted attorneys such as Barneys meant, in practice, exclusion for a length of time much shorter than the five years applicable to attorneys disbarred in this jurisdiction. *See* D.C. Bar R. XI, § 16(a). But Barneys has made no such showing. At the time of his conduct, "disbarment" in Maryland "when applied to an attorney not admitted by the Court of Appeals to practice law mean[t] *permanent* exclusion from exercising in any manner the privilege of practicing law in [Maryland]." *Harper,* 785 A.2d at 312 n. 1 (emphasis added) (quoting then-Rule 16–701(g), MARYLAND RULES OF PRACTICE AND PROCEDURE, TITLE 16, CHAPTER 700). As revised in 2001, Maryland's discipline rules still define "disbarment," as applied to an attorney not admitted to practice there, to mean "the unconditional exclusion from the admission to or the exercise of any privilege to practice law in this State." Rule 16–701(e) (2004); *see also* Rule 16–760(k)(2).[2] Barneys points to nothing in Maryland's rule governing reinstatement, *see* Rule 16–781, that envisions lifting of this unconditional

exclusion substantially earlier than the five years provided by the District's rule.

For the rest, we are satisfied that to impose here the same discipline that Maryland found necessary in this case yields no manifest injustice. The relevant comparison is to our decision in *Harper, supra,* where we likewise ordered reciprocal disbarment of an attorney licensed in the District who had engaged in unauthorized practice in Maryland. The Maryland Court of Appeals found this case similar to *Harper,* and so do we. Like Harper, Barneys engaged in what the Maryland court termed "deliberate and persistent" misconduct by representing "at least five clients in Maryland state courts" while unlicensed. *Barneys I,* 805 A.2d at 1054, 1053; *see Harper,* 785 A.2d at 317. Moreover, his "deceptive tendencies," *id.* at 1054, were demonstrated by his dealings with Gates Bail Bonds, to whom he gave a document printed on his letterhead captioned "Assignment of Settlement Proceeds" that carried both his signature and purportedly that of his client, Sanchez—whom he in fact did not represent and whose signature, as the Maryland court found, Barneys had "forged," *see id.*, resulting in forfeiture of the sizeable bail bond.[3] Further, as the Maryland court explained, Barneys

closed his office [in Maryland] only after his involvement in the Sanchez case was discovered and he was threatened with an injunction action. Had his misconduct not been discovered then, there is

---

1. That jurisdictional fact is not altered by the choice-of-law provisions Barneys cites. *See* Rule 8.5(b)(2).

2. The severity of this "unconditional exclusion" is confirmed by the lesser sanction of "indefinite suspension" that the two dissenting judges in *Barneys I* would have ordered. *See* 805 A.2d at 1061 (Bell, C.J., dissenting).

3. Accordingly, besides unauthorized practice, Barneys was found to have committed "misconduct" in Maryland including conduct "involving dishonesty, fraud, deceit or misrepresentation." *Barneys I,* 805 A.2d at 1042 n. 7.

nothing in the record to suggest Barneys would not have continued or even expanded his illegal activities.

*Id.* at 1053. And in recounting Barneys' deception, the Maryland court also did not "forg[et]" his representation in applying for admission to the Maryland Bar that he was practicing only in the District when in fact he was practicing in Maryland, 805 A.2d at 1054 n. 22, as well as his misrepresentations to Maryland Bar Counsel's investigator. *Id.* at 1055.

In sum, the Board in this case concluded that, "[a]bsent an affirmative showing by [Barneys] that his situation can, and should, be distinguished from the situation of the attorney in *Harper,* we cannot conclude that the imposition of identical reciprocal discipline of disbarment would result in an obvious miscarriage of justice under *Spann."* We agree—indeed, Barneys' brief in this court barely mentions *Harper*—and accept the Board's recommendation.

Accordingly, respondent Bradford J. Barneys is disbarred from the practice of law in the District of Columbia. The period of time after which he may apply for reinstatement will begin to run upon his compliance with the requirements of D.C. Bar Rule XI, § 14; *see* Rule XI, § 16(c).

*So ordered.*

---

