*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-BG-5

IN RE SHERRYL V.R.S. GOFFER A/K/A SHERRYL SNODGRASS CAFFEY, RESPONDENT.[1]

A Suspended Member of the Bar
of the District of Columbia Court of Appeals
(Bar Registration No. 405100)

On Report and Recommendation
of the Board on Professional Responsibility
(BDN-399-13)

(Argued April 9, 2015                                        Decided August 6, 2015)

*Melanie J. Canter*, Assistant Executive Attorney, with whom *Elizabeth J. Branda*, Executive Attorney, and *James T. Phalen*, Deputy Executive Attorney, were on the brief, for the Board on Professional Responsibility.

*William R. Ross*, Assistant Bar Counsel, with whom *Wallace E. Shipp, Jr.*, Bar Counsel, *Jennifer P. Lyman*, Senior Assistant Bar Counsel, and *Jelani Lowery*, Senior Staff Attorney, were on the brief, for the Office of Bar Counsel.

Before FISHER and EASTERLY, *Associate Judges*, and RUIZ, *Senior Judge*.

---

[1] Respondent was registered in the District of Columbia Bar under the last name "Goffer." However, in the disciplinary proceedings in Alabama and the reciprocal proceedings in the District of Columbia that are the subject of this appeal, she is referred to as "Caffey." We therefore note both names in the caption and refer to respondent in this opinion by the name "Caffey" used in the directly relevant proceedings.

FISHER, *Associate Judge*: When neither the respondent nor Bar Counsel opposes identical reciprocal discipline, "the imposition of identical discipline should be close to automatic, with minimum review by both the Board and this court." *In re Childress*, 811 A.2d 805, 807 (D.C. 2002) (quoting *In re Cole*, 809 A.2d 1226, 1227 n.3 (D.C. 2002). At most, the reviewing body should examine "the foreign proceeding sufficiently to satisfy itself that no obvious miscarriage of justice would result [from] the imposition of identical discipline—a situation that we anticipate would rarely, if ever, present itself." *In re Spann*, 711 A.2d 1262, 1265 (D.C. 1998).

Although we have often repeated these words,[2] we have yet to provide much guidance for assessing whether an obvious miscarriage of justice will result. We do so here and conclude that this is not one of those very rare cases where an obvious miscarriage of justice will result from imposing identical reciprocal discipline.

---

[2] *See, e.g.*, *In re Reed*, 950 A.2d 35, 40 (D.C. 2008); *In re Stuart*, 942 A.2d 1118, 1120 (D.C. 2008); *In re Mininsohn*, 896 A.2d 191, 192 (D.C. 2006); *In re DeWitt*, 884 A.2d 641, 642 (D.C. 2005).

# I.    Background

On November 18, 2008, the Disciplinary Board of the Alabama State Bar (the "DBASB") held a hearing on a complaint filed against Ms. Sherryl Caffey. Caffey did not attend the hearing or otherwise participate in the disciplinary proceedings.[3] Based on the live testimony and a review of trial transcripts, the DBASB determined that Caffey had engaged in serious misconduct in her representation of a defendant in a criminal case culminating in being found in contempt by the trial court and prompting a mistrial.

Specifically, the DBASB determined that Caffey had violated several of the Alabama Rules of Professional Conduct;[4] thus, the DBASB issued a judgment disbarring her. The Supreme Court of Alabama issued an order of disbarment on

---

[3] On the morning of the hearing, Caffey left a voicemail with the Alabama State Bar. She claimed to have "typical flu symptoms" and asked to continue the hearing. Representatives of the state bar placed return calls to Caffey's home and workplace but were unable to reach her. Caffey made no further attempts to contact the DBASB or state bar regarding the status of her request.

[4] In particular, Caffey violated Rule 3.1 (a) (claims or contentions lacking merit); Rule 3.2 (delaying litigation); Rule 3.5 (c) (conduct intended to disrupt a tribunal); Rule 8.2 (false statement concerning integrity of judicial officers); Rule 8.4 (a) (misconduct); Rule 8.4 (d) (conduct prejudicial to the administration of justice); and Rule 8.4 (g) (conduct adversely reflecting on attorney's fitness to practice law).

August 21, 2009. [5] Caffey did not report her disbarment to our Board on Professional Responsibility (the "Board"), as required by D.C. Bar R. XI, § 11 (b). However, in October 2013, she contacted the D.C. Bar in an apparent attempt to reinstate her license, which has been administratively suspended for nonpayment of dues since November 1987. Caffey claimed that she had not been disbarred in Alabama and that "nefarious actors had inserted a fraudulent document into the Alabama Court's records."

On January 3, 2014, Bar Counsel filed with this court a certified copy of the Alabama court order disbarring Caffey. *See* D.C. Bar R. XI, § 11 (b). We then temporarily suspended Caffey from the practice of law in the District and ordered her to show cause why she should not be disbarred. Caffey did not reply, and Bar Counsel recommended that we impose the identical reciprocal discipline of disbarment.

Under our current rules, reciprocal discipline cases are not normally considered by the Board. Nevertheless, "[u]pon receipt of the attorney's response

---

[5] After her disbarment, Caffey filed federal civil actions against nearly all of the parties involved in her Alabama disciplinary proceedings and the underlying trial. *See Caffey v. Ala. Supreme Court*, 469 F. App'x 748, 750 (11th Cir. 2012). The actions were dismissed, and the dismissals have been affirmed on appeal. *Id.* at 750-52.

to the show cause order, if any, and of any submission by Bar Counsel, the Court may refer the matter to the Board for its consideration and recommendation." D.C. Bar R. XI, § 11 (e). Notwithstanding that Caffey did not respond to the show-cause order, we took that course in this case, seeking the Board's views. Despite notice, and an opportunity to do so, Caffey did not participate in the proceedings before the Board.

Applying D.C. Bar R. XI, § 11 (c)(4), the Board found that disbarment is substantially different from the sanction that would have been imposed had Caffey's misconduct occurred in the District. It therefore recommends that we impose a ninety-day suspension but require Caffey to demonstrate her fitness to practice law before she may be reinstated. Bar Counsel takes exception to that recommendation, arguing that the Board failed to accord appropriate deference to Alabama's decision and unnecessarily complicated its review in an uncontested case "by applying the typical exceptions to reciprocal discipline" available to attorneys who contest identical discipline. Although we appreciate the Board's assistance, we agree that it erred by analyzing this case as if it were a contested proceeding.

In considering this matter, we have been assisted by briefs and oral argument presented by Bar Counsel and the Board. Although we granted Ms. Caffey's belated request for an extension of time to file a brief, she ultimately did not file one.

## II.    Analysis

"[T]he disciplinary system need not make extraordinary efforts . . . for an attorney who cares so little about his license to practice law in this jurisdiction that he makes no objection to the possibility that he might be reciprocally disbarred here." *In re Drager*, 846 A.2d 992, 994 (D.C. 2004). Therefore, in uncontested proceedings, we impose identical reciprocal discipline almost automatically, with minimum review to ensure that no obvious miscarriage of justice results. *Childress*, 811 A.2d at 807; *Spann*, 711 A.2d at 1265.

The Board acknowledged this standard, but failed to properly apply it. In a comprehensive analysis of our case law, the Board surveyed the range of sanctions that have been imposed for similar misconduct occurring in the District and determined that disbarment is substantially different. It, in essence, conducted the typical Rule 11, section 11 (c) review required in contested reciprocal proceedings,

*see In re Jacoby*, 945 A.2d 1193, 1199-1200 (D.C. 2008), undermining at least one of the policies underlying our standard of heightened deference—to conserve scarce resources for cases where the parties present an actual controversy.

An obvious miscarriage of justice is "easily discovered, seen, or understood," *see Webster's New Collegiate Dictionary* 787 (1979) (defining obvious). To determine whether such a result will occur as a consequence of reciprocal discipline, a reviewing body need not (and by definition should not) conduct an in-depth inquiry. It should be easy to see that imposing the identical sanction will cause a grossly unfair outcome; if it is not, the robust presumption in favor of identical reciprocal discipline that applies in uncontested cases has not been overcome.

On the other hand, the imposition of identical discipline is not entirely automatic even when the attorney has not objected. *See* D.C. Bar R. XI, § 11 (e) (providing that the court may impose non-identical discipline if (1) the attorney demonstrates by clear and convincing evidence, or (2) the court finds "*on the face of the record*, that one or more of the grounds set forth in subsection (c) of this section exists") (emphasis added). We have applied this limited review with a particular focus on considerations which can be assessed from the face of the

record: notice and an opportunity to be heard in the foreign proceeding and whether our rules proscribe the sanctioned conduct.[6] *See, e.g.*, *In re Gruber*, 889 A.2d 991, 992-93 (D.C. 2005) (reciprocal disbarment imposed in uncontested proceeding where respondent received notice and was given an opportunity to be heard in the foreign proceeding; his misappropriation and dishonesty violated District rules; and, "given that Bar Counsel recommends disbarment and respondent has not opposed it, disbarment [was] not so excessive as to be grossly unjust"); *In re Berger (Awuah)*, 737 A.2d 1033, 1038, 1043-45 (D.C. 1999) (reciprocal sixty-day suspension and fitness requirement imposed in uncontested proceeding where respondent participated in foreign proceeding and his sanctioned behavior (commingling of client funds) constituted misconduct in the District; court rejected Board's determination that it would be a "grave injustice" to impose

---

[6] Citing *In re Feigenbaum*, Bar Counsel contends that this "[c]ourt has imposed identical discipline even where . . . the misconduct [in the foreign jurisdiction] would not even result in discipline in this jurisdiction." 951 A.2d 754 (D.C. 2008). We do not read *Feigenbaum* so broadly.

In *Feigenbaum*, we imposed identical reciprocal discipline where a respondent violated a court order "to file an affidavit stating he notified his clients and opposing counsel of his suspension." 951 A.2d at 756. The particular act of failing to file an affidavit attesting that respondent had notified his clients and opposing counsel of his suspension—required under D.C. Bar R. XI, § 14 (g)— was not by itself misconduct in the District. However, where respondent was ordered to file the equivalent of a § 14 (g) affidavit in the foreign jurisdiction and failed to do so, his failure to comply with a court order was grounds for discipline in this jurisdiction. *See* D.C. Bar R. XI, §§ 2 (b)(3), 14 (g).

a fitness requirement "where, even after the Board's recommendation [of a downward departure] and Bar Counsel's exception, respondent Awuah has not complained to this court that identical discipline should not be imposed"). We have reiterated "that the 'obvious miscarriage of justice' which is required for a departure from the presumed identical discipline is 'a situation that we anticipate would rarely, if ever, present itself'" in an uncontested proceeding. 737 A.2d at 1045 (quoting *Spann*, 711 A.2d at 1265).

The facts of this case readily demonstrate that this is not the "rare" case where such an obvious miscarriage of justice will result. Caffey received notice and was given an opportunity to be heard in the Alabama disciplinary proceeding. The Board does not dispute that if it had occurred in the District of Columbia, Caffey's behavior would have violated our Rules of Professional Conduct, including Rule 1.1 (b) (duty to serve a client with skill and care); Rule 3.5 (impartiality and decorum of the tribunal); and Rule 8.4 (d) (serious interference with the administration of justice). Caffey's misconduct has been deemed contemptuous and prejudicial to her client by forcing a mistrial. She was found to have acted dishonestly and with selfish motive.

The Board characterizes Caffey's conduct as "condemnable" but contends that this case "simply does not involve the egregious facts that result in disbarment in this jurisdiction." Arguing that the District's rules reflect a policy of greater tolerance than those of Alabama for at least some of Caffey's conduct,[7] the Board concludes that her behavior warrants a less severe sanction. We recognize that our jurisdiction's policies may differ from those of our sister states. But, particularly in an uncontested case that involves conduct violative of other disciplinary rules that have been adopted here, it is not our role to parse nuances in the implementation of the rules governing attorney conduct. Instead, "the imposition of identical discipline should be close to automatic, with minimum review by both the Board and this court." *Childress*, 811 A.2d at 807.

It might well be that, if we were reviewing an original proceeding in this jurisdiction, or, indeed, if we were considering reciprocal discipline in a contested matter, we could be persuaded not to disbar Caffey for her conduct in connection with the Alabama trial. But that sort of detailed comparison is not the task before us. We conduct, instead, a limited review, keeping firmly in mind that Caffey

---

[7] The DBASB found that Caffey violated Rule 8.2 (false statement concerning integrity of judicial officers), a model rule which Alabama has adopted. Because of concern regarding its potential chilling effect, this jurisdiction has not adopted that model rule. *See In re De Maio*, 893 A.2d 583, 587-88 (D.C. 2006).

apparently "cares so little about [her] license to practice law in this jurisdiction that [s]he makes no objection to the possibility that [s]he might be reciprocally disbarred here." *Drager*, 846 A.2d at 994. Caffey's indifference is not surprising; she has been administratively suspended in the District of Columbia for nonpayment of dues since 1987.

We do not act unfairly by assigning such significant weight to Caffey's failure to oppose identical reciprocal discipline. There is no doubt that she had notice of the instant proceedings.[8] She requested, and was granted, additional time to file a brief with the court.[9] We recognize that, in some circumstances, physical or other forms of incapacitation may prevent an attorney who has received notice from participating in disciplinary proceedings. But Caffey has never claimed that she was hampered by incapacity. The nature of her misconduct and some of her actions since then do raise concerns, but there is nothing in the record before us

---

[8] During the course of these proceedings, Caffey has communicated with the Board's Office of the Executive Attorney, with the Office of Bar Counsel, and with this court.

[9] At oral argument, Bar Counsel represented that it informed Caffey of her right to counsel and suggested the possibility of the Board appointing counsel.

that establishes any sort of disability or diminished capacity[10] adequate to rebut the strict presumption that applies in uncontested cases in favor of identical reciprocal discipline.

## III.  Conclusion

Accordingly, we order that respondent Sherryl V.R.S. Goffer (also known as Sherryl Snodgrass Caffey) be disbarred from the practice of law in the District of Columbia, effective immediately, and that her name be stricken from the roll of attorneys authorized to practice before this court.  For the purposes of reinstatement, the period of disbarment shall not be deemed to commence until Caffey files an affidavit that conforms to the requirements of D.C. Bar R. XI, § 14 (g).

*So ordered.*

---

[10]  To determine the appropriate disciplinary sanction in the Alabama proceedings, the DBASB considered whether mitigating circumstances were present and found that Caffey had no "personal or emotional problems" and no "physical or mental disability or impairment."  The record before us does not explain the basis for these findings, but it also does not provide us with a basis to find that such mitigating circumstances applied.