**In re Mark H. ZILBERBERG, Respondent, A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 91–SP–209.**

District of Columbia Court of Appeals.

Argued March 5, 1992.
Decided Aug. 4, 1992.

Elizabeth A. Herman, Asst. Bar Counsel, with whom Wallace E. Shipp, Jr., Acting Bar Counsel at the time the brief was filed, and Michael S. Frisch, Asst. Bar Counsel, were on the brief, for petitioner, the Office of Bar Counsel.

Mark H. Zilberberg, respondent pro se.

Before ROGERS, Chief Judge, and TERRY and STEADMAN, Associate Judges.

TERRY, Associate Judge:

On January 5, 1987, respondent Zilberberg, an attorney, was suspended from the practice of law in the state of Virginia for three years. The Virginia State Bar Disciplinary Board found that Mr. Zilberberg had violated Virginia Disciplinary Rules 1–102 (conduct involving dishonesty, fraud, deceit, or misrepresentation), 9–102 (commingling, failure to notify client promptly of receipt of funds, and failure to pay client such funds promptly on request), and 9–103 (failure to maintain detailed records of client funds).[1] After the District of Columbia Bar Counsel forwarded a certified copy of the Virginia State Bar order to this

1. At the time of Mr. Zilberberg's suspension, the District of Columbia Code on Professional Responsibility contained substantially similar disciplinary rules. So do our new Rules of Professional Conduct, which took effect on January 1, 1991.

court, we suspended Mr. Zilberberg from the practice of law in this jurisdiction and ordered him to show cause before the Board of Professional Responsibility ("the Board") why identical discipline should not be imposed. The Board recommended that Mr. Zilberberg be disbarred *nunc pro tunc* as of January 5, 1987. We reject the Board's recommendation and instead suspend Mr. Zilberberg for three years, *nunc pro tunc* as of that date.

I

The facts underlying Mr. Zilberberg's suspension in Virginia are summarized in the order of the Virginia State Bar Disciplinary Board ("the Virginia Board"). The suspension arose from his representation of Julia Brown in a personal injury case. In May 1985, shortly after Mr. Zilberberg had left private practice and gone to work as an attorney for a government agency, he received a $2500 settlement check from an insurance company in full settlement of Mrs. Brown's claim against its insured. One-third of this check constituted Zilberberg's fee. At that time he did not have a separate trust account for client funds related to his private practice,[2] so he deposited this check in his personal checking account. At the time of the Virginia disciplinary hearing in December 1986, he had "no current records of when the check was received or deposited."[3] In addition, during the weeks immediately following his receipt of the settlement check, Mr. Zilberberg misrepresented to his client, Mrs. Brown, the status of her case and the date on which he had received the check.

On June 14, 1985, Mr. Zilberberg wrote a check for $1633.66 to Mrs. Brown, her share of the settlement proceeds, which he asked her not to deposit for several days. When eventually she did deposit it, the check was dishonored for insufficient funds. At the time Mr. Zilberberg wrote this check, his checking account balance was $301.65. Finally, on July 8, Mr. Zilberberg delivered to Mrs. Brown a certified check for the full amount due. Some time thereafter he paid Mrs. Brown an additional $130 to cover her travel expenses when she came to Washington on June 14 to pick up the check that later bounced.

Although Mr. Zilberberg does not dispute these facts—indeed, he stipulated to them in the Virginia proceeding—he urges before this court, as he did before the Board, that there were mitigating circumstances. He points out that these events took place not only while he was closing his private practice but also during a period of great personal stress, when he was going through a divorce and, at the same time, losing his eyesight to cataracts.[4] Furthermore, he has since moved to Florida and in recent years has provided many unpaid hours of legal assistance to indigent clients on a *pro bono*, no-fee basis. He has received awards for some of this work from Legal Services of North Florida, has worked as a court mediator for a local Florida court, and has served as a guardian *ad litem* by appointment of the Florida Supreme Court. He has also retaken and passed the Multi-State Professional Responsibility Examination. He notes that he has not been previously disciplined in the District of Columbia[5] and has not practiced in the District of Columbia since the date of his Virginia suspension. Finally, he emphasizes that the disciplinary authorities in Florida, where he now resides and practices law, chose not to impose the same disciplinary sanction as Virginia but instead is-

2. The Virginia Board found that Mr. Zilberberg maintained no trust account as of April 30, 1985, when he was employed by the government. There is no finding one way or the other as to whether he ever had such an account before he closed his practice.

3. His bank statement, however, showed a deposit of $2500 on May 6, 1985.

4. Fortunately, Mr. Zilberberg's vision has since been substantially restored by cataract surgery.

5. He has, however, twice been disciplined in the state of Virginia since his three-year suspension was imposed in January 1987. In August 1989 Mr. Zilberberg was suspended from the practice of law in Virginia for ninety days, to run consecutively to his three-year suspension, for neglect of a client's case. The following year, in June 1990, he was reprimanded by the Virginia State Bar Disciplinary Board for failure to notify a client of his 1987 suspension.

sued a public reprimand.[6] In these circumstances, Mr. Zilberberg contends that disbarment is too harsh and urges us to impose a lesser sanction.

II

Under Rule XI, § 11(c) of this court's Rules Governing the Bar, "[r]eciprocal discipline shall be imposed unless the attorney demonstrates, by clear and convincing evidence," that the case falls within one or more of five specifically enumerated exceptions. The rule thus creates a rebuttable presumption that the discipline will be the same in the District of Columbia as it was in the original disciplining jurisdiction.[7] *See In re Velasquez,* 507 A.2d 145, 146–147 (D.C.1986). In the instant case, the Board recommends disbarment, rather than a mere three-year suspension. It relies on the fourth of the five exceptions, which permits a different sanction (either greater or lesser, *see In re Coury,* 526 A.2d 25, 26 (D.C.1987)) when the misconduct proven to have occurred in the foreign jurisdiction would warrant "substantially different discipline in the District of Columbia...." We hold that the Board's recommendation is not supported by the record of the Virginia proceedings and hence that the presumption has not been rebutted. We therefore apply the presumption and impose the identical sanction—a three-year suspension—that was imposed in Virginia.

In its order of suspension, the Virginia Board made factual findings which we have summarized in part I of this opinion: that Mr. Zilberberg received the settlement check, deposited it in his own account (having no trust account at the time), misrepresented to Mrs. Brown the status of her case, kept from her the fact that he had received the check, and later gave her a check that bounced before finally delivering to her a certified check for the amount due from the settlement. The Virginia Board also found that Zilberberg had "no current records of when the check was received or deposited." Significantly lacking from the Virginia order, however, was any finding that Mr. Zilberberg's conceded misappropriation of his client's funds [8] was intentional or the result of anything more than mere negligence. Because this is a reciprocal proceeding, with a presumption of identical discipline, the lack of such a finding is crucial—and, in this case, dispositive.

The Board based its recommendation of disbarment on the fact that there was "no indication that [Zilberberg's] misappropriation was inadvertent or the result of simple negligence...." Observing that in such circumstances "disbarment would be the appropriate discipline in the District of Columbia" under our decision in *In re Addams,* 579 A.2d 190 (D.C.1990) (en banc), the Board concluded that Zilberberg should be disbarred. This conclusion overlooks the fundamental difference between disciplinary proceedings originating in the District of Columbia, in which establishing whether a misappropriation was the result of "simple negligence" or something more is of singular importance,[9] and a reciprocal

6. The judge who served as referee in the Florida proceedings found that Mr. Zilberberg's "mitigation overwhelms his offenses."

7. Because Mr. Zilberberg's misconduct occurred before January 1, 1991, this case is governed by our former Code of Professional Responsibility, not our current Rules of Professional Conduct. See note 1, *supra.* The order promulgating the new Rules states in part:

> [W]ith respect to *conduct occurring before January 1, 1991,* the provisions of the Code of Professional Responsibility in effect on the date of the conduct in question are the governing rules of decision for this court, the Board on Professional Responsibility, its Hearing Committees, and Bar Counsel.

Order No. M–165–88, filed March 1, 1990 (emphasis added). In this opinion, however, we shall cite the relevant portions of the new Rules, since they are materially identical to the former Code. (There is one difference between the new section 11(c) and the former section 18(5), but it does not affect the outcome of this case.)

8. "Depositing client funds into an attorney's operating account"—or personal account, as in this case—"constitutes commingling; misappropriation occurs when the balance in that account falls below the amount due to the client." *In re Micheel,* 610 A.2d 231, 233 (D.C. 1992) (citation omitted).

9. We held in *In re Addams:*

> [I]n virtually all cases of misappropriation, disbarment will be the only appropriate sanc-

proceeding in which it is presumed that the sanction imposed here will be the same as the one imposed in the jurisdiction from which the case came. *See In re Velasquez, supra,* 507 A.2d at 147.

Bar Counsel argues that the Board was justified in inferring from the record of the Virginia proceedings that Mr. Zilberberg's misappropriation was intentional, and that Zilberberg should therefore be disbarred. We do not think the Board actually drew such an inference; rather, it appears that the Board merely assumed that what it saw as the *Addams* rule would apply automatically in a reciprocal proceeding. We hold that such an assumption is unwarranted. To apply *Addams* automatically to a case such as this would result in "an inconsistent disposition involving identical conduct by the same attorney." *In re Velasquez, supra,* 507 A.2d at 147. Such a result is beyond the scope of the *Addams* opinion and clearly was not addressed by the *Addams* court.

The issue before us, therefore, is whether the Virginia record is sufficient to justify a greater sanction than the Virginia Board imposed—*i.e.,* sufficient to overcome the presumption that our sanction will be the same as Virginia's. We conclude that it is not. We hold that in a reciprocal proceeding, when a greater sanction is sought in the District of Columbia, the record must affirmatively show that a greater sanction is warranted—as it did, for example, in *In re Reid,* 540 A.2d 754 (D.C.1988), and *In re Larsen,* 589 A.2d 400 (D.C.1991). If the existing record from the original disciplining jurisdiction is insufficient for that purpose, then the record must be augmented before a greater sanction may be imposed. The usual means of augmentation will probably be, we expect, a *de novo* hearing before a hearing committee. *See* D.C. Bar Rule XI, § 11(g)(2).[10]

In the case before us, Mr. Zilberberg's misappropriation is undisputed, but there is some doubt about whether it was intentional or merely the result of "simple negligence." The Virginia Board's findings of fact shed no light on the critical issue of whether the misappropriation was knowing and intentional or merely negligent.[11] We note that at the time the misconduct occurred, Mr. Zilberberg was not only going through the trauma of closing down his practice but was also undergoing a great deal of personal stress due to the simultaneous failure of his marriage and his eyesight. The presumption of identical discipline embodied in Rule XI, § 11(c) thus requires us to give Mr. Zilberberg the benefit of the doubt and to hold that a sanction greater than that imposed in Virginia is not warranted. We emphasize that this holding is not based on any of Mr. Zilberberg's proffered mitigating circumstances, but on the failure of the Virginia record to justify a greater sanction.[12]

We see no need to remand the case to the Board as we did in *In re Brickle,* 521 A.2d 271 (D.C.1987). In *Brickle* an attorney resigned from the Virginia bar while misappropriation charges were pending against him, and his license to practice law was revoked. Under Virginia law, an attorney who resigns under such circumstances "is deemed to have admitted those charges." *Id.* at 272 (citation omitted). Our Board on Professional Responsibility recommended that the same discipline be imposed in the District of Columbia, *viz.,* "revocation" of

tion *unless* it appears that the misconduct resulted from nothing more than simple negligence.

579 A.2d at 191 (emphasis added).

10. This is not inconsistent with our holding in *In re Reid, supra,* that such a hearing is not required before a greater sanction may be recommended by the Board and imposed by the court. All we are saying here is that, *if the existing record is insufficient,* the most likely way to remedy that insufficiency is to hold a hearing and place on the record the grounds for a greater sanction, whatever they may be.

11. The basis of the dishonesty ruling by the Virginia Board is equally obscure, but it apparently relates to Mr. Zilberberg's misrepresentation to his client, not the misappropriation itself.

12. We need not, and do not, decide whether such mitigating factors would be sufficient to warrant a lesser sanction than disbarment under *Addams, supra,* 579 A.2d at 191 (court "shall regard a lesser sanction as appropriate only in extraordinary circumstances").

the attorney's license to practice law. We concluded that such revocation was "analogous to suspending respondent for an indefinite period and requiring him to demonstrate fitness before being reinstated." *Id.* at 273 (citation omitted). However, because "the discipline normally warranted upon proof of the misconduct alleged against respondent, *i.e.,* disbarment, constitute[d] a substantially different discipline from that imposed in Virginia," we remanded the case to the Board for a *de novo* hearing. *Id.* The instant case differs from *Brickle* in one important respect. In *Brickle* the record affirmatively showed that the attorney's misappropriation would have been sufficient to warrant disbarment if it had occurred in the District of Columbia. Here, however, the record falls short of such a showing, and hence it fails to rebut the presumption that the sanction imposed in the District of Columbia will be the same as that imposed in Virginia.

The only remaining matter to be decided is the effective date of the sanction. Under *In re Goldberg,* 460 A.2d 982, 985 (D.C.1983), and Board Rule 8.5(b), a reciprocal suspension or disbarment may be made to run concurrently with the sanction imposed elsewhere if the attorney promptly notifies Bar Counsel of that sanction and voluntarily refrains from practicing in the District of Columbia. The Board's report tells us that Mr. Zilberberg has complied with this rule by submitting an affidavit "attesting to his cessation of practice in the District of Columbia since the date of his Virginia suspension." The Board accordingly recommends that our sanction be imposed *nunc pro tunc* as of the effective date of the Virginia suspension. We accept that recommendation.

It is therefore ORDERED that Mark H. Zilberberg be, and hereby is, suspended from the practice of law in the District of Columbia for a period of three years, effective January 5, 1987.

STEADMAN, Associate Judge, dissenting in part:

I agree with much of Judge Terry's analysis, but take issue with the disposition. Here, the Virginia conduct may or may not have been such as to "warrant substantially different discipline in the District of Columbia." One cannot tell with assurance from the facts related in the Virginia Board's findings, but the Board's perception that such might well be the case does not seem unwarranted. Accordingly, I would remand to the Board for further factual inquiry. I do not think that the presumption in favor of reciprocal discipline is so compelling that it applies even where the other jurisdiction's proceedings leave significant doubt as to the extent of the attorney's wrongful conduct.