In re Glenn H. CARLSON, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals.

Nos. 98–BG–1491, 99–BG–889.

District of Columbia Court of Appeals.

Submitted Nov. 12, 1999.

Decided Jan. 13, 2000.

Before RUIZ, GLICKMAN, and WASHINGTON, Associate Judges.

PER CURIAM:

Respondent, Glenn H. Carlson, was charged with multiple violations of the Code of Professional Responsibility and the Rules of Professional Conduct, includ-ing the prohibitions against misappropria-tion of funds and intentionally damaging his client. During the pendency of the proceeding before the Board on Profes-sional Responsibility, this court, on petition of the Board, entered an order temporarily suspending respondent from the practice of law in the District of Columbia, effective immediately, on the ground that he "ap-pears to pose a substantial threat of seri-ous harm to the public, based on evidence that he has misappropriated client funds." Order of November 3, 1998, *In re Carlson,* No. 98–BG–1491.

***Factual Background***

On June 25, 1985, while employed as a porter by Krupp Company, Dunel Calixte was injured by a piece of metal expelled from a lawn mower operated by Lancas-ter Landscaping, Inc. Respondent repre-sented Mr. Calixte in a worker's compen-sation claim and a related civil suit. During the course of his representation, respondent demanded approximately \$33,-000 from Liberty Mutual Insurance Com-pany (Liberty Mutual), the insurer for Krupp Company, to settle Mr. Calixte's worker's compensation claim. Approxi-mately a year later, Liberty Mutual agreed, provided its lien was protected and respondent would represent its inter-est in any third-party action brought on behalf of Mr. Calixte. As part of the settlement, Liberty Mutual agreed to lim-it its right of subrogation against any third-party claim of Mr. Calixte to \$22,-000. Later, respondent negotiated with Liberty Mutual to reduce the lien to \$15,-000 based on respondent's representation that he was considering a settlement of \$75,000 in the civil suit against Lancaster Landscaping.

Once a settlement with Lancaster had been paid, in September 1990, respondent distributed Mr. Calixte's portion of the settlement proceeds to him and transmit-ted a check for \$15,000 to Liberty Mutual with a restrictive endorsement stating that acceptance constituted payment in full. Because the actual settlement with Lan-

caster had been for $90,000 and not $75,-000, a disagreement arose with Liberty Mutual as to the amount for which it had agreed to settle its lien, and Liberty Mutual returned the check to respondent. Respondent did not inform Mr. Calixte about the disagreement, but over a course of time he withdrew funds against the $15,-000 set aside for Liberty Mutual from the escrow account without Mr. Calixte's authorization and used them for his own purposes. Eventually, the account was depleted.

In February 1991, Mr. Calixte moved to Tulsa, Oklahoma, believing that Liberty Mutual's lien had been satisfied. On January 12, 1994, Liberty Mutual filed a civil action against Mr. Calixte seeking $22,000 that it alleged it was owed from the settlement with Lancaster in satisfaction of its worker's compensation lien. Mr. Calixte called respondent, who told him to send any information he had so that respondent could respond to the suit. Mr. Calixte sent him a letter with a copy of Liberty Mutual's petition in the Oklahoma action. Thereafter, respondent did not enter his appearance or file any pleadings or documents in the Oklahoma action. He assured Mr. Calixte that he would find an attorney to represent him in Oklahoma, but he did not. He continually assured Mr. Calixte that he was taking care of the matter, but did not inform Mr. Calixte about a settlement offer from Liberty Mutual, did not return his phone calls and did not protect his interests. A default judgment was entered against Mr. Calixte in the amount of $22,000 on March 15, 1995. Subsequently, $5,583.60 of Mr. Calixte's wages were garnished, he was denied financing for a mortgage on a house because his credit record reflected the lien and in August 1997 he was forced to file for bankruptcy. All the while, respondent did not respond to Mr. Calixte's attempts to communicate with him, or, when he did respond, assured Mr. Calixte that he would take care of the matter while continually failing to take any action to protect his client's interests.

In another matter, respondent represented Mr. Victor Webber in a dispute with his employer. Mr. Webber made several ethical complaints about respondent, which were investigated by Bar Counsel. Respondent failed to respond to three letters from Bar Counsel (one of which was personally served on him), a motion to compel a written response, and an order of the Board to respond to allegations in the complaint. He also failed to appear at a hearing, despite having received notice of the February 20, 1998, hearing date no later than January 21, 1998.

### Board Recommendation

The Board found, in connection with his representation of Mr. Calixte, that respondent knowingly and intentionally misappropriated funds in violation of Disciplinary Rule (DR) 9–103(A) and Rule 1.15(a); failed to deliver funds promptly in violation of DR 9–103(B)(4) and Rule 1.15(b); failed to maintain complete records of settlement funds in violation of DR 9–103(B)(3) and Rule 1.15(a); engaged in dishonest conduct in violation of Rule 8.4(c) both by affirmative misrepresentations and by failure to provide information to his client which he had a duty to provide; neglected his client in violation of Rule 1.3; failed to seek the lawful objectives of his client in violation of DR 7–101(A)(1) and Rule 1.3(b); intentionally prejudiced his client during the course of their professional relationship in violation of DR 7–101(A)(3) and Rule 1.3(b)(2); and failed to pursue his client's objectives in violation of Rule 1.2(a).

In the Webber case, the Board found that respondent engaged in conduct prejudicial to the administration of justice in violation of Rule 8.4; and failed to comply with an order of the Board and to respond to the Webber complaint in violation of D.C. Bar R. XI, § 2(b)(3).

The Board has recommended disbarment and restitution as discipline. Bar Counsel has informed the court that he takes no exception to the Board's report

and recommendation. Respondent has not filed any opposition.

*Sanction*

■ Misappropriation alone is sufficient to disbar respondent under this court's ruling in *In re Addams,* 579 A.2d 190, 191 (D.C.1990) (en banc):

> We now reaffirm that in virtually all cases of misappropriation, disbarment will be the only appropriate sanction unless it appears that the misconduct resulted from nothing more than simple negligence.

This ruling was reaffirmed by *In re Hollis,* 719 A.2d 965 (D.C.1998) (per curiam).

Respondent has not only intentionally misappropriated funds; he has also engaged in other repeated acts of serious misconduct. Thus, we accept and adopt the Board's recommendation. Accordingly, it is

■ ORDERED that Glenn H. Carlson is disbarred from the practice of law in the District of Columbia as of the date of this order. It is further

ORDERED that, as a condition of reinstatement to membership in the bar, Glenn H. Carlson shall make restitution in the amount of $15,000, with accrued interest at an annual rate of six percent from September 1990. The sum of $9,416.40, with interest, should be paid to Liberty Mutual Insurance Company. The Board has recommended that the sum of $5,583.60 (the amount Mr. Calixte's wages were garnished), with interest, be paid to the Clients' Security Fund of the D.C. Bar. Because the record before us does not show, however, that Mr. Calixte has been reimbursed by the Clients' Security Fund, upon petition for reinstatement the court will review the matter to determine whether respondent has disgorged the balance of his ill-gotten gains either to Mr. Calixte directly or to the Clients' Security Fund, as appropriate. *See In re Ray,* 675 A.2d 1381, 1389 (D.C.1996); D.C. Bar R. XI, § 3(b) (this court "may require an attorney to make restitution ... to persons financially injured by the attorney's conduct ... as a condition of probation or of reinstatement.")

Respondent's attention is again called to D.C. Bar R. XI, § 14, including the affidavit requirement of subsection (g), and to the consequences of not timely complying with the requirements of section 14 set forth in D.C. Bar R. XI, § 16(c). For the purposes of reinstatement to the Bar, respondent's disbarment shall commence on the date he files a sufficient affidavit pursuant to D.C. Bar R. XI, § 14(g).

*So ordered.*