* This case was originally scheduled for oral argument after having been postponed from an earlier date at respondent's request. When the case was called and respondent

For the foregoing reasons, the decision of the trial court hereby is

*Affirmed.*

In re Paul T. DEMOS, II, Respondent.

**A Member of the Bar of the District of Columbia Court of Appeals. (Bar Registration No. 438677).**

**No. 00–BG–1274.**

District of Columbia Court of Appeals.

Submitted Jan. 22, 2003. *

Decided May 26, 2005.

See also, 579 A.2d 668.

failed to appear in the courtroom, the court ordered the matter submitted without argument.

Paul T. Demos, II, filed a brief pro se.

Joyce E. Peters, Bar Counsel at the time the brief was filed, and John T. Rooney, Assistant Bar Counsel, were on the brief for the Office of Bar Counsel.

Before WAGNER, Chief Judge, and TERRY and WASHINGTON, Associate Judges.

TERRY, Associate Judge:

The Board on Professional Responsibility ("the Board") recommends that we impose reciprocal, but not identical, discipline [1] on respondent Demos for misconduct committed before the United States District Court for the District of Arizona

---

1. The term "reciprocal discipline" is sometimes ambiguous because it "may be read in two different senses, that is, sometimes as meaning *identical* discipline and sometimes meaning that discipline here is imposed *on* *the basis of* the foreign discipline but, typically, with a different sanction." *In re Drury*, 638 A.2d 60, 62 n. 6 (D.C.1994) (emphasis in original).

(hereafter the "Arizona federal court"). On December 28, 1994, respondent was stricken from the Arizona federal court's roll of attorneys. The Board recommends that he be disbarred in the District of Columbia. We adopt the Board's recommendation and order respondent's disbarment.

## I

Respondent passed the District of Columbia bar examination in 1983, but was not admitted to our bar at that time, for reasons explained in *In re Demos,* 579 A.2d 668 (D.C.1990) (en banc). Eventually, however, he was admitted on August 2, 1993.

In September of 1993, respondent applied for admission to the bar of the United States District Court for the Northern District of Texas. In his application he said he was a resident of Phoenix, Arizona, and practiced law with a firm in Tempe, Arizona. His application was approved, and respondent was admitted on October 4, 1993.

On October 25, 1993, respondent applied for admission to practice before the Arizona federal court. That court's Local Rule of Practice 1.5 provides that attorneys may be admitted to practice before the court if they are admitted "to any Federal Court" or admitted to practice in the state of Arizona. The rule further states, however, that attorneys who either reside in Arizona or have a principal office or practice in Arizona must be admitted to the bar of the State of Arizona. Therefore, according to the information he provided in his application to the Northern District of Texas, respondent needed to become a member of the Arizona bar before being admitted to practice before the Arizona federal court. Respondent sought to avoid this requirement by stating on his application for admission that he resided in an apartment in Albuquerque, New Mexico, and that his law firm was located in Washington, D.C.

Respondent was admitted to practice before the Arizona federal court by what that court later characterized as a "ministerial act," without appearing before a judicial officer.[2] Soon thereafter, however, the Arizona federal court issued a show cause order "regarding the truth of the matters contained in his application." After a hearing, the Arizona federal court found that there were "numerous inconsistencies in connection with Mr. Demos' multiple application process." In particular, the District of Columbia address he listed for his law firm was merely "a mail drop address," and the "suite number" was a numbered mailbox rented from Mailboxes Etcetera. Likewise, there was no record that he had ever owned or rented property at his stated address in Albuquerque. Additionally, the Arizona federal court noted that respondent said he expected to file his 1993 tax return in Arizona, leading the court to conclude "that his statement about the Arizona residence is more likely true than the Albuquerque residence statement contained on the application." The record also showed that respondent had an Arizona driver's license. Observing that there were "ample indicia that Arizona is indeed his place of residence," the Arizona federal court concluded that respondent "intentionally and knowingly misled [the court] in furnishing information on an application for admission," and that "his application to practice in the Northern District of Texas contained more accurate and

2. Copies of the relevant orders from the courts in Arizona and Texas are included in the record before us and were before the Board at the time it made its recommendation.

truthful information regarding his residence, but would not have permitted him to be admitted under the Local Rule to practice in this District." As a result, respondent was stricken from the roll of attorneys in the Arizona federal court on December 28, 1994. Several months thereafter, in October 1995, his admission to the bar of the United States District Court for the Northern District of Texas was revoked.

■ On October 3, 2000, the District of Columbia Office of Bar Counsel reported to this court the actions of the courts in Arizona and Texas.[3] A week later, on October 10, pursuant to D.C. Bar Rule XI, § 11(d), this court suspended respondent, ordered him to show cause before the Board within ten days why identical, greater, or lesser discipline should not be imposed, and directed the Board to submit its recommendation. On November 7, 2000, Bar Counsel filed a statement with the Board asserting that the greater sanction of disbarment should be imposed.[4] The Board, in its Report and Recommendation, agrees with Bar Counsel and recommends that respondent be disbarred in the District of Columbia.

After the Board issued its report, respondent filed with this court on January 19, 2002, a "Statement of Exception" to the Board's recommendation. At no prior time did he respond to the court's show cause order, nor did he participate in the proceedings before the Board.

## II

■ Before we consider the merits of respondent's arguments, we must first address Bar Counsel's contention that respondent waived his right to challenge the Board's recommendation by failing to file a timely objection to the Board's stated intention to seek reciprocal discipline and by failing to participate in the proceedings before the Board. When the recommended reciprocal discipline is identical (see note 1, *supra*), Bar Counsel's argument is amply supported by case law. *See In re Harper*, 785 A.2d 311, 316 (D.C.2001) ("Treating an opposition filed for the first time in this court as equivalent to a timely response to the show cause order thwarts the operation of a disciplinary system that depends heavily on the Board's expertise in making recommendations"); *In re Spann*, 711 A.2d 1262, 1263 (D.C.1998) (by failing to take part in the proceedings before the Board, respondent "waived his right to show cause why he should not be subject to identical discipline"); *In re Sheridan*, 680 A.2d 439, 440 (D.C.1996) (same); *In re Aldridge*, 664 A.2d 354, 355 (D.C.1995) ("by failing even to respond to this court's order to show cause why reciprocal discipline should not be imposed, [respondent] has effectively defaulted on the issue whether such cause exists"); *In re Goldsborough*, 654 A.2d 1285, 1288 (D.C. 1995) (respondent's silence deemed to be an admission of liability and a concession that the imposition of reciprocal discipline was warranted).

3. Respondent failed to notify Bar Counsel of these disciplinary actions, as he was required to do by D.C. Bar Rule XI, § 11(b). Bar Counsel discovered them during the investigation of an unrelated matter.

4. Disbarment is a greater sanction than merely being stricken from the roll of attorneys. In the District of Columbia a disbarred attorney must wait five years before applying for reinstatement, *see* D.C. Bar Rule XI, § 16(a), whereas the Rules of Practice of the Arizona federal court do not require that an attorney stricken from its rolls wait for any prescribed period of time before seeking readmission. Thus an attorney stricken from the rolls by the Arizona federal court could be reinstated within less than five years. *See In re Brickle*, 521 A.2d 271, 273 (D.C.1987).

These cases, however, all involved situations in which Bar Counsel sought *identical* reciprocal discipline. We have found no reported case in this jurisdiction in which the failure to participate in the Board's proceedings precluded an attorney from arguing against *greater* discipline, and we think we have an obligation at least to "satisfy [ourselves] that no obvious miscarriage of justice would result" from imposing the recommended sanction. *In re Spann,* 711 A.2d at 1265. Accordingly, while respondent (or any attorney) may be barred from arguing to this court that identical reciprocal discipline should not be imposed after failing to make such an argument before the Board, we see no reason to preclude him from arguing against the imposition of greater discipline than that imposed by the original disciplining court.

### III

When an attorney is brought before our disciplinary system for misconduct occurring in another jurisdiction, the applicable rule states:

Reciprocal discipline shall be imposed unless the attorney demonstrates, by clear and convincing evidence, that:

(1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

(2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or

(3) The imposition of the same discipline by the Court would result in grave injustice; or

(4) The misconduct established warrants substantially different discipline in the District of Columbia; or

(5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.

D.C. Bar Rule XI, § 11(c). This rule "creates a rebuttable presumption that the discipline will be the same in the District of Columbia as it was in the original disciplining jurisdiction." *In re Zilberberg,* 612 A.2d 832, 834 (D.C.1992) (citation and footnote omitted). The purpose of the presumption is to avoid "an inconsistent disposition involving identical conduct by the same attorney." *In re Velasquez,* 507 A.2d 145, 147 (D.C.1986).

Nevertheless, the authority of the Board to recommend greater discipline, and of this court to impose it, is well established. *See In re Gardner,* 650 A.2d 693, 696 (D.C.1994) ("the rules do not preclude the Board from recommending the imposition of a lesser *or a harsher* sanction" (emphasis added)); *In re Reid,* 540 A.2d 754, 758 (D.C.1988) (same); *see also In re Drury,* 638 A.2d 60, 62 (D.C.1994) (recognizing Rule XI, § 11(f) as the source of this court's authority to deviate from imposing identical discipline).[5] While one or more of the five exceptions listed in section 11(c) are typically cited by an attorney in urging that lesser discipline is warranted in the District of Columbia, the "substantially different discipline" exception in paragraph (4) can also be relied upon by Bar Counsel in arguing for greater discipline. *See In re Coury,* 526 A.2d

---

5. Rule XI, § 11(f)(2) provides in part:
   [T]he Court shall impose the identical discipline unless the attorney demonstrates, *or the Court finds on the face of the record* on which the discipline is predicated, by clear and convincing evidence, that one or more of the grounds set forth in subsection [(c)] exists.
   [Emphasis added.]

25, 26 (D.C.1987) (the "substantially different discipline" provision "may be invoked where the foreign sanction, whatever its form, is effectively either significantly heavier or lighter than that which we would impose for the same misconduct").

■ Determining whether the "substantially different discipline" exception warrants greater or lesser discipline involves a two-step inquiry. "First, we determine if the misconduct in question would not have resulted in the same punishment here as it did in the disciplining jurisdiction." *In re Garner*, 576 A.2d 1356, 1357 (D.C.1990) (citations omitted). "Same punishment" is defined as a sanction "within the range of sanctions that would be imposed for the same misconduct." *Id.* (citations omitted). Accordingly, the appropriate question for us to address is not whether Bar Counsel would have sought disbarment for respondent's misconduct if it had originally occurred here, but whether the original discipline elsewhere is within the range of sanctions possible here. *See In re Fuller*, 674 A.2d 907, 909 (D.C.1996) ("had this matter arisen originally in the District of Columbia, a more severe sanction might well be appropriate. However ... [t]he test is whether the discipline imposed in the foreign jurisdiction is 'within the range of sanctions that would be imposed for the same misconduct.'" (citation omitted)). Second, if the discipline imposed in the District of Columbia would be different from that of the original disciplining court, we must then decide whether the difference is "substantial." *Id.*[6]

Being stricken from the rolls of attorneys in the Arizona federal court is the functional equivalent of an indefinite suspension, *see In re Brickle, supra* note 4, 521 A.2d at 273 ("Revoking respondent's license to practice law is analogous to suspending respondent for an indefinite period and requiring him to demonstrate fitness before being reinstated"), and an indefinite suspension is not one of the seven possible sanctions this court is authorized to impose. *See* D.C. Bar Rule XI, § 3(a)(2) (allowing suspension only for "an appropriate fixed period of time"); *In re Larsen*, 589 A.2d 400, 404 (D.C.1991) ("Under our rules, an attorney cannot be suspended for an indefinite period"). While ordinarily we would try to fashion a disciplinary sanction that is "functionally equivalent" to that imposed in the original jurisdiction, *see In re Robertson*, 618 A.2d 720, 724 (D.C.1993),[7] we will not do so here because disbarment not only is the norm, but typically has been the *only* sanction imposed by this court for intentional misrepresentations during the application process to the degree displayed by respondent. *See, e.g., In re Regent*, 741 A.2d 40, 41 (D.C.1999) (imposing reciprocal disbarment for making material misrepresentations on application for admission to Hawaii bar); *In re Webster*, 661 A.2d 144, 150 (D.C.1995) (imposing reciprocal disbarment for "manipulat[ing] the flow of information between the District of Columbia, Florida, and Palau in order to practice law"); *In re Gilbert*, 538 A.2d 742, 746 (D.C.1988) (imposing reciprocal disbarment for intentional non-disclosure

---

**6.** This court has already held that "[a]n indefinite suspension is substantially less severe than disbarment, which precludes reinstatement for a period of five years." *In re Brickle, supra* note 4, 521 A.2d at 273 (citation omitted). Thus only the first part of the two-part test warrants discussion here.

**7.** "[W]e are not precluded from imposing the identical discipline so long as the original sanction is 'functionally equivalent to one that we might have imposed had the case arisen before us in the first instance.'" *In re Robertson*, 618 A.2d at 724 (citing *In re Coury*, 526 A.2d at 25).

of material information during the process for admission to the Maryland bar); *see also Carver v. Clephane,* 78 U.S.App. D.C. 91, 92, 137 F.2d 685, 686 (1943) ("appellant's lack of candor in his repeated applications for admission to the bar is reason enough for his exclusion"). The only analogous cases we have found that resulted in a sanction less than disbarment are distinguishable because they did not involve intentional false statements, such as those made here. *See In re Rosen,* 570 A.2d 728, 729 (D.C.1989) (nine-month suspension for making statement "in reckless disregard of the truth" on bar application); *In re Small,* 760 A.2d 612, 613 (D.C.2000) (three-year suspension in a non-reciprocal proceeding for, *inter alia,* failure to supplement bar application).

Respondent argues that had his misconduct occurred here, it would have resulted only in a suspension ranging from thirty days to a year. He relies chiefly on *In re Phillips,* 705 A.2d 690, 691 (D.C.1998) (sixty-day suspension for filing false and misleading petition in federal court); *In re Cerroni,* 683 A.2d 150, 152 (D.C.1996) (one-year suspension for criminal conviction for knowingly submitting false statement to United States Department of Housing and Urban Development and the Federal Housing Administration); and *In re Kent,* 467 A.2d 982, 985 (D.C.1983) (thirty-day suspension for misdemeanor shoplifting conviction). Those cases are all distinguishable from the case at bar because they involve violations of Rule 8.4 of our Rules of Professional Conduct, whereas respondent's misconduct falls under Rule 8.1.

■ Moreover, even in the context of Rule 8.1, this court draws a distinction between false statements made during a disciplinary investigation and false statements made during the application process. *See, e.g., In re Bell,* 716 A.2d 205, 206–207 (D.C.1998) (public censure for

false statement during disciplinary investigation); *In re Fink,* 696 A.2d 1082, 1084 (D.C.1997) (six-month suspension for false statement during disciplinary investigation). Thus, even though cases involving false statements during an investigation fall under Rule 8.1, we do not take into account the corresponding sanctions when ascertaining the "range of sanctions" for an attorney's false statements during the application process, which are regarded more seriously.

■ Thus we conclude that the discipline imposed by the Arizona federal court is not within the range of sanctions imposed (or available) in this jurisdiction. Because both parts of the "substantially different discipline" analysis are met, we hold that the greater sanction of disbarment is warranted under Rule XI, § 11(c)(4).

## IV

■ Respondent offers three other arguments against disbarment, each of which warrants only limited discussion. First, he claims, "the record shows that [he] lacked the intent to mislead the court in his application." We interpret this claim as an invocation of the "infirmity of proof" exception under Rule XI, § 11(c)(2), thus raising the possibility that his misconduct would be met with something less than disbarment (assuming he is also arguing that his misrepresentations were reckless rather than intentional; *see In re Rosen,* 570 A.2d at 729–730 (nine-month suspension for reckless misrepresentation on bar application)). We reject any such assertion. "Unless there is a finding by the Board under [section 11(c)(2)] that is accepted by the Court, a final determination by a disciplining court outside the District of Columbia ... shall conclusively establish the misconduct for the purpose of a reciprocal disciplinary proceeding in this

Court." Rule XI, § 11(c). The "infirmity of proof" exception is "not an invitation to the attorney to relitigate in the District of Columbia the adverse findings of another court in a procedurally fair proceeding." *In re Bridges*, 805 A.2d 233, 235 (D.C.2002) (citation omitted); *accord, In re Shearin*, 764 A.2d 774, 777 (D.C.2000). Because respondent was afforded an opportunity to present evidence on his own behalf at a proceeding in Arizona that appears from the record to have been fundamentally fair, we find no merit in this argument.

■ Respondent also maintains that the imposition of greater discipline under the "substantially different discipline" exception violates Article IV, § 1 of the United States Constitution, 28 U.S.C. § 1738 (2000), and "the reciprocity principles of recognition of disciplinary judgments between states." We have rejected such an argument in prior cases, *see In re Krouner*, 748 A.2d 924, 931 (D.C.2000) ("Nothing in the Constitution requires blind conformity between the standards for attorney discipline adopted by different jurisdictions"); *In re Reid*, 540 A.2d at 759 n. 6 (refusing to hold that this court owes "due deference" to Maryland disciplinary decision because "we are obligated first to honor the policies of this jurisdiction"), and we reject it here as well.

■ Finally, respondent argues that the imposition of reciprocal discipline would be a "grave injustice" under Rule XI, § 11(c)(3) He fails, however, to articulate any support for such a claim, except to reiterate the reasons that are more properly considered in the "substantially different discipline" analysis.

## V

It is therefore ORDERED that respondent is hereby disbarred from the practice of law in the District of Columbia, effective immediately. We direct respondent's attention to the requirements of Rule XI, §§ 14(g) and 16(c), and their effect on his eligibility for reinstatement.