In re Henry J. USCINSKI, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 412779).

No. 03–BG–414.

District of Columbia Court of Appeals.

Argued March 31, 2009.

Decided Oct. 1, 2009.

Amended Aug. 12, 2010.*

* We issue this amended opinion to correct and clarify certain aspects of our initial opinion, *see In re Uscinski*, 981 A.2d 588 (D.C.2009), which we hereby vacate.

William R. Ross, Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Bar Counsel, and Judith Hetherton, Senior Assistant Bar Counsel, were on the brief, for the Office of Bar Counsel.

Henry J. Uscinski, pro se.

Before FISHER, BLACKBURNE–RIGSBY, and THOMPSON, Associate Judges.

BLACKBURNE–RIGSBY, Associate Judge:

This case involves two parallel disciplinary proceedings [1]—one arising as a reciprocal disciplinary matter [2] that originated in New York and another arising as a result of respondent's criminal conviction.[3] Henry Uscinski ("respondent") challenges a report of the District of Columbia Board on Professional Responsibility ("Board") recommending greater reciprocal discipline than that imposed on respondent by the Supreme Court of the State of New York, Appellate Division, Second Judicial Department ("New York Court").[4] With respect to respondent's reciprocal discipline matter, the Board recommends that we impose the greater reciprocal discipline of disbarment because the New York Court's imposition of a five-year suspension was a "substantially different" discipline than would have been imposed in the District of Columbia for the same actions. The Board recommends that the proceedings which stem from respondent's conviction for tax evasion be dismissed as moot.

Respondent raises three issues, contending that: (1) he did not waive his right to argue against Bar Counsel's proposed imposition of greater reciprocal discipline; (2) the Board wrongly concluded that the New York Court's determination that he "improperly transferred" client funds constituted a finding of "intentional misappropriation"; and (3) he deserves an opportunity to address a Hearing Committee on the issue of whether his tax evasion conviction constituted a crime involving "moral turpitude." [5]

We agree with respondent that the record does not support a finding of intentional misappropriation; accordingly, we decline to adopt the Board's recommendation of disbarment and instead impose discipline functionally identical to that imposed by the New York Court, namely a five-year suspension coupled with a fitness requirement. We conclude that the record before us lacks clear and convincing evidence to support the Board's finding that

1. *See In re Ditton*, 954 A.2d 986, 992 (D.C. 2008) ("pairing of reciprocal and original discipline").

2. D.C. Bar Rule XI, § 11(c).

3. D.C.Code § 11–2503(a); see note 9, *infra.*

4. The New York Court fits within the D.C. Bar XI, § 11(a)(2)(c) definition of a "disciplining court" in that it is "[a] tribunal . . . that is authorized to impose discipline effective throughout a state."

5. See note 9, *infra.*

respondent's actions in New York of "improperly transferring" client funds constitute "intentional misappropriation" under District of Columbia law, thereby warranting the greater sanction of disbarment. Because reinstatement in the District of Columbia is conditioned on demonstration of fitness to practice law, however, we adopt the Board's other recommendation that the proceedings stemming from respondent's criminal conviction be dismissed as moot.

## I. Factual and Procedural Background

### A. The New York Court

Respondent is an attorney barred in New York, Connecticut, and the District of Columbia. He pled guilty to tax evasion in the United States District Court for the Northern District of Florida. *United States v. Uscinski*, 369 F.3d 1243, 1246 (11th Cir.2004). On August 7, 2003, the New York Court suspended respondent from the practice of law for his conviction of a serious crime.[6]

The factual findings that led to respondent's suspension from the New York Bar are as follows. The New York Court's Special Referee found that respondent's client, Claude DuBoc, was indicted in 1996 in connection with an international drug trafficking and money laundering prosecution. As part of his plea agreement, DuBoc agreed to forfeit all of his assets to the federal government. Respondent's law firm, Coudert Brothers, was retained to handle matters relative to the forfeiture of DuBoc's assets. Respondent was the partner in charge of these transactions. Legal fees owed to Coudert Brothers were to be paid from Canadian assets that had been turned over to DuBoc's criminal defense attorney, F. Lee Bailey. On May 22, 1996, DuBoc executed a power of attorney enabling respondent to act on behalf of DuBoc in all respects with his bank accounts. Between August 1, 1996 and November 19, 1996, respondent used DuBoc's power of attorney to transfer more than $1,550,000.00 from DuBoc's bank account in Austria to respondent's personal, Swiss accounts. Between 1996 and 1998, respondent transferred portions of these funds to other bank accounts he controlled in Hong Kong and Thailand for his personal use. Respondent failed to report any funds he received from DuBoc on his 1996 federal tax return, which understated his income by $1,551,863.00 and his tax due by $638,698.00. In subsequent conversations with government lawyers as well as attorneys from Coudert, respondent denied that he knew anything about assets in Austria that were under DuBoc's control.

On December 5, 2006, at the conclusion of the disciplinary proceedings, the New York Court determined that respondent had violated New York Disciplinary Rules 1–102(a)(3) and (4)[7] and suspended re-

---

**6.** New York Judiciary Law § 90(4)(f) states, "Any attorney and counselor-at-law convicted of a serious crime, as defined in paragraph (d) of this subdivision, whether by plea of guilty or nolo contendere or from a verdict after trial or otherwise, shall be suspended upon the receipt by the appellate division of the supreme court of the record of such conviction until a final order is made pursuant to paragraph (g) of this subdivision."

A New York Court Grievance Committee was then authorized to institute and prosecute a disciplinary proceeding against respondent, and refer the matter to a Special Referee to "hear and report." On June 14, 2004, respondent's disciplinary proceedings were held in abeyance pending his release from prison.

**7.** New York Disciplinary Rules 1–102(a)(3) and (4), respectively, state that a lawyer shall neither engage in "illegal conduct that adversely reflects on the lawyer's honesty, trustworthiness or fitness as a lawyer" nor "conduct involving dishonesty, fraud, deceit, or misrepresentation." These rules correspond to the District of Columbia's Rules of Profes-

spondent from the practice of law for five years and until further order of the court, with a requirement that he apply for reinstatement. *In re Uscinski*, 36 A.D.3d 308, 310, 826 N.Y.S.2d 375 (N.Y.App.Div.2006) (per curiam).[8] The New York Court relied on the Special Referee's factual findings and assessment that respondent "willfully evaded income taxes in 1996 in an effort to hide the money he had *improperly transferred* from his client ... [and that respondent had] l[ied] to the government during a January 1999 telephone conference regarding the location and purpose of the transfers." *Id.* (emphasis added).

### B. The District of Columbia Court of Appeals

This court was informed, by letter dated April 24, 2003, that respondent was convicted of income tax evasion, and pursuant to D.C. Bar Rule XI, § 10(c), we suspended respondent from the practice of law in the District. Further, this court ordered the Board to institute formal proceedings to determine what final discipline should be imposed on respondent, in light of whether or not respondent's crime involved "moral turpitude within the meaning of D.C.Code § 11–2503(a)."[9] *See In re Colson*, 412 A.2d 1160, 1165 (D.C.1979) (en

banc) (noting that if a crime does not involve moral turpitude *per se*, requiring automatic disbarment, the matter should be referred to a Hearing Committee for an examination of the underlying facts). The matter never went to a Hearing Committee, however, because the Board stayed the matter several times at the request of both respondent and Bar Counsel during respondent's incarceration and during the pendency of the New York disciplinary matter.

On December 5, 2003, Bar Counsel filed a Specification of Charges, which alleged that respondent's conduct underlying his conviction violated Rules of Professional Conduct 8.4(b) (committed criminal acts (tax evasion and obstruction of justice) that reflect adversely on his honesty, trustworthiness, or fitness as a lawyer in other respects); 8.4(c) (engaged in conduct involving dishonesty, fraud, deceit, and/or misrepresentation); and 8.4(d) (engaged in conduct that seriously interferes with the administration of justice). In addition, Bar Counsel petitioned the Board for formal disciplinary proceedings. In response, respondent requested that the Board extend his time to file an answer until his release from custody, until the Eleventh

---

sional Conduct 8.4(b) (committed criminal acts that reflect adversely on his honesty, trustworthiness, or fitness as a lawyer in other respects) and 8.4(c) (engaged in conduct involving dishonesty, fraud, deceit, and/or misrepresentation).

8. The New York Court also ordered that respondent "(1) refrain[ ] from practicing or attempting to practice law, (2) fully compl[y] with this opinion and order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys, (3) compl[y] with the continuing legal education requirements ..., and (4) otherwise properly conduct[ ] himself." *Uscinski, supra*, 36 A.D.3d at 310–11, 826 N.Y.S.2d 375 (citations omitted).

9. Section 11–2503(a) provides that "[w]hen a member of the bar of the District of Columbia Court of Appeals is convicted of an offense involving moral turpitude, and a certified copy of the conviction is presented to the court, the court shall, pending final determination of an appeal from the conviction, suspend the member of the bar from practice. Upon reversal of the conviction the court may vacate or modify the suspension. If a final judgment of conviction is certified to the court, the name of the member of the bar so convicted shall be struck from the roll of the members of the bar and such person shall thereafter cease to be a member. Upon the granting of a pardon to a member so convicted, the court may vacate or modify the order of disbarment."

Circuit's decision of respondent's direct appeal, or until March 1, 2004.

The Board agreed to give respondent an extension until March 1, 2004 to file his answer. On March 1, 2004, respondent filed a motion for an indefinite stay of the proceedings because he had been moved to a different correctional facility and, thus, was unable to communicate with his counsel. The Board then granted the motion and stayed the proceedings pending respondent's release from incarceration or notice from Bar Counsel or respondent's counsel that the conditions of respondent's incarceration had changed, permitting his assistance in the preparation of his defense. Ultimately, the Board continued the stay and ordered both Bar Counsel and respondent to notify the Board in writing within thirty days of issuance of discipline against respondent in either Connecticut or New York, stating what, if any, discipline was issued and what effect it should have on the stay in this matter.

In a January 31, 2007 letter, respondent informed the Board and Bar Counsel of the discipline imposed by New York, and on March 14, 2007, Bar Counsel filed with this court a certified copy of the New York Court's order suspending respondent for five years, and until further order of that court, with a requirement that he apply for reinstatement. The following day, on March 15, 2007, Bar Counsel requested that the Board continue the stay of the pending disciplinary proceeding based on respondent's conviction because the possible imposition of reciprocal discipline by this court (based on the New York Court's sanction) might obviate the need for a moral turpitude hearing on respondent's criminal conviction. On March 27, 2007, pursuant to D.C. Bar Rule XI, § 11(d), we suspended respondent from the practice of law pending final disposition of a proceeding in the District of Columbia and ordered that Bar Counsel inform the Board of its position regarding reciprocal discipline and whether such discipline should be identical, greater, or lesser.

## C. The Board's Recommendation

The Board makes two recommendations.[10] First, the Board recommends that respondent be disbarred, as a "substantially different discipline," for intentional misappropriation of client funds. Second, the Board recommends that the tax evasion issue be dismissed as moot. Looking to Bar Counsel's recommendations[11] and citing *In re Addams*, 579 A.2d 190, 191 (D.C. 1990) (en banc), the Board found that respondent's conduct rose to the level of intentional misappropriation, "for which the presumptive sanction ... is disbarment." Furthermore, the Board reasoned that its decision was undergirded by respondent's failure to object to Bar Counsel's recommendation of disbarment and the *Addams* presumption of disbarment for reckless or intentional misappropriation.

Respondent took exception to the Board's Report and Recommendation and requested a briefing schedule from this court. Accordingly, we granted respondent until February 20, 2008 (forty days), to file a responsive brief to the Board's Report and Recommendation. Respondent moved for an extension of time, and

10. The Board essentially adopted Bar Counsel's recommendations. However, it declined to adopt Bar Counsel's suggestion that respondent could also be disbarred for other reasons—i.e., breach of fiduciary duty or tax evasion.

11. The Board noted that "Bar Counsel supports the imposition of reciprocal discipline but objects to an identical sanction, which would be a five-year suspension with the requirement to prove fitness to practice as a condition of reinstatement."

we granted it—ordering that his brief be filed on or before April 11, 2008. On April 11, 2008, respondent filed his objections to the Board's Report and Recommendation. Bar Counsel then submitted a motion to strike because respondent had neither filed his April 11, 2008 pleading with the Board nor served a copy on Bar Counsel pursuant to D.C.App. Rule 25(b). Bar Counsel also contended that respondent's April 11, 2008 pleading failed to comply with several other provisions of the Rules of the District of Columbia Court of Appeals. We denied Bar Counsel's motion to strike.

## II. Analysis

### A. Standard of Review

 When we review disciplinary cases, "[we defer] to the Board's recommended disposition unless the sanction is unwarranted or inconsistent with sanctions for comparable conduct." *In re Drury*, 683 A.2d 465, 468 (D.C.1996) (quoting *In re Slosberg*, 650 A.2d 1329, 1330 (D.C.1994)). When we review reciprocal discipline cases, we "can impose a greater sanction than that imposed in the other jurisdiction." *Id.* (quoting *In re Dietz*, 653 A.2d 854, 855 (D.C.1995)). Bar Counsel and the Board may rely upon the "substantially different discipline" exception, D.C. Bar Rule XI § 11(c)(4), when arguing for or recommending a greater sanction. *See Ditton, supra*, 954 A.2d at 989 (citing *In re Jacoby*, 945 A.2d 1193, 1198 (D.C.2008), and *In re Drury*, 638 A.2d 60, 62 n. 6 (D.C.1994)). However, "in a reciprocal proceeding, when a greater sanction is sought in the District of Columbia, the record must affirmatively show that a greater sanction is warranted . . . ." *Id.* (quoting *In re Zilberberg*, 612 A.2d 832, 835 (D.C.1992)); *see also Jacoby, supra*, 945 A.2d at 1198; *In re Goldsborough*, 654 A.2d 1285, 1287 (D.C.1995) (citing *Zilberberg, supra*, 612 A.2d at 834).

### B. Respondent Did Not Waive His Right to Oppose Greater Reciprocal Discipline

 Respondent contends that his failure to contest Bar Counsel's proposed imposition of disbarment for misappropriation before the Board was not a waiver of his right to oppose greater reciprocal discipline. We agree.

In *In re Demos*, 875 A.2d 636 (D.C. 2005), we addressed the issue of whether a respondent waived his right to challenge the Board's recommendation of greater reciprocal discipline. There, we noted that we "found no reported case in this jurisdiction in which the failure to participate in the Board's proceedings precluded an attorney from arguing against *greater* discipline." *Demos*, 875 A.2d at 641 (emphasis in original). Accordingly, we noted our obligation to at least " 'satisfy [ourselves] that no obvious miscarriage of justice would result' from imposing the recommended sanction." *Id.* (alteration in original) (quoting *In re Spann*, 711 A.2d 1262, 1265 (D.C.1998)). Thus, "while respondent (or any attorney) may be barred from arguing to this court that identical reciprocal discipline should not be imposed after failing to make such an argument before the Board, we see no reason to preclude him from arguing against the imposition of greater discipline than that imposed by the original disciplining court." *Id.* Accordingly, where—like here—the recommended discipline is greater than that imposed by a sister court, respondent is entitled to challenge that recommendation. *Id.*

### C. The Board Did Not Establish by Clear And Convincing Evidence That Respondent's Conduct Constituted Intentional Misappropriation, Thus Warranting Disbarment

 Respondent challenges the Board's recommendation for a "substantially differ-

ent" sanction than what was imposed by the New York Court. He contends that the Board wrongly concluded that what the New York Court characterized as his "improper transfer of client funds" constituted "intentional misappropriation" in the District of Columbia. We agree.

■ Bar Counsel may rely on the "substantially different discipline" exception in D.C. Bar Rule XI, § 11 in urging greater reciprocal discipline. D.C. Bar Rule XI, § 11(c)(4); *see Jacoby, supra*, 945 A.2d at 1198; *see also In re Coury*, 526 A.2d 25, 25–26 (D.C.1987). A two-step inquiry is necessary to determine if this exception applies. First, we consider whether "the misconduct in question would not have resulted in the same punishment here as it did in the disciplining jurisdiction[,]" *In re Garner*, 576 A.2d 1356, 1357 (D.C.1990) (citing *In re Hirschberg*, 565 A.2d 610, 614 (D.C.1989)); and second, "where the discipline imposed in this jurisdiction would be different from that of the disciplining court, we must then determine whether the difference is substantial." *Id.* (citing *In re Brickle*, 521 A.2d 271, 273 (D.C. 1987)). We have previously determined that there is a substantial difference between disbarment and suspension. *See In re Hilson*, 953 A.2d 1018, 1019 (D.C.2008) (per curiam); *In re Grossman*, 940 A.2d 85, 87 (D.C.2007) (per curiam).

If respondent's conduct were determined to constitute intentional misappropriation, the presumptive sanction in the District of Columbia would be disbarment, not suspension. *See Hilson, supra*, 953 A.2d at 1019 (citing *Grossman, supra*, 940 A.2d at 86–87) (finding disbarment appropriate for intentional misappropriation where attorney "intentionally converted client funds for his own use"). District of Columbia law defines misappropriation as "any unauthorized use of client's funds entrusted to him [or her], including not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not he [or she] derives any personal gain or benefit therefrom." *Addams, supra*, 579 A.2d at 194 n. 9 (quoting *In re Harrison*, 461 A.2d 1034, 1036 (D.C.1983)) (alteration in original). Where an attorney acted intentionally in misappropriating client funds, we will usually order disbarment. *Id.* at 196. Intentional misappropriation is such a serious offense because it compromises the integrity at the heart of the client-attorney relationship. *Id.* For this reason, disbarment is the presumptive sanction for intentional misappropriation. *Id.* at 198 (explaining that, "in general, neither the usual mitigating factors, nor subsequent proper bookkeeping practices or client satisfaction can overcome the presumption that ... disbarment will be the appropriate sanction.") (internal citations omitted).

Respondent contends that the New York Court never used the word "misappropriation" in reference to his conduct vis-a-vis his client's funds. Respondent offers several other explanations he contends militate against the Board's finding that his conduct constituted intentional misappropriation: (1) that he had power of attorney to transfer those funds for payment of his services; (2) that simply because his client's Canadian account was established to pay attorney's fees, that did not preclude respondent from withdrawing funds from the Austrian account because he had been authorized by the client to do so; (3) that it was unclear at the time he transferred funds from his client's account to his own account whether those funds were the client's funds or the government's funds; and (4) that the withdrawn funds were legitimate funds that did not have to

be relinquished to the government.[12] As respondent notes, the New York Court did not characterize his conduct as "misappropriation," *per se*. Instead, the New York Court described respondent's conduct as the "improper transfer" of client funds.[13] *Uscinski, supra*, 36 A.D.3d at 310, 826 N.Y.S.2d 375. The New York Court did not, however, specify why the transfer was improper. The Board recharacterized respondent's conduct as "intentional misappropriation," despite the New York Court's finding that the conduct constituted an "improper transfer," as in *In re Pennington*, 921 A.2d 135, 143 (D.C.2007), and asks this court to do the same. On this record, however, we cannot.

In *Pennington*, we explained that with the exception of instances of intentional misappropriation, we do not apply the "presumption" of disbarment as an appropriate sanction. 921 A.2d at 141 (citing *Addams, supra*, 579 A.2d at 191). In *Pennington*, the Maryland Court of Appeals found that the respondent committed, *inter alia*, violations of the Maryland Rules of Professional Conduct 8.4(b) & (d)—i.e., "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation," and "engag[ing] in conduct that is prejudicial to the administration of justice," respectively. *Id.* at 139. These violations led the Maryland court to disbar the respondent. *Id.* (citation omitted). The respondent's disbarment in Maryland was dictated by "a presumption under Maryland law that an attorney who engages in intentional dishonesty will be disbarred." *Id.* at 140. We went on to agree with the Board's recommendation that the respondent's Maryland misconduct would not warrant disbarment in the District of Columbia, absent additional circumstances of aggravation that were not demonstrated. *Id.* Our determination was largely based on the fact that the Board recharacterized "the misconduct found by Maryland in a manner that [could not] be reconciled with Rule XI, § 11(c)."[14] *Id.* at 142.

Similarly, in this case, the Board concluded that respondent committed an "intentional misappropriation" of client funds based upon its recharacterization of what the New York Court described as an "improper transfer." "Given these actions, we cannot help concluding that the recommended [discipline] by the Board reflects disagreement with the very nature of the misconduct found by [New York]—a disagreement that was beyond its authority in this reciprocal matter." *Pennington, supra*, 921 A.2d at 143 (citation omitted).

### D. Respondent's Criminal Conviction Matter Should be Dismissed as Moot

■ Lastly, respondent contends that he is entitled to address the Hearing Com-

---

12. There is no indication in the record that respondent made these same arguments to the New York Court's Special Referee.

13. We acknowledge that we disbarred an attorney for intentional misappropriation of client funds in *In re Carlson*, 745 A.2d 257 (D.C.2000) (per curiam) ("*Carlson I*") and then in a later, related case, we described the conduct that supported our "intentional misappropriation" determination in *Carlson I* as an "improper transfer of [client] funds." *In re Carlson*, 802 A.2d 341, 349 (D.C.2002) ("*Carlson II*"). In any event, *Carlson II* certainly does not stand for the proposition that

all improper transfers of client funds necessarily amount to intentional misappropriation.

14. In relevant part, D.C. Bar Rule XI, § 11(c) states that "[u]nless there is a finding by the Court under [provisions of that section inapplicable here], a final determination by another disciplining court that an attorney has been guilty of professional misconduct shall conclusively establish the misconduct for the purpose of a reciprocal disciplinary proceeding in this Court."

mittee now on the matter of whether his criminal conviction, in the United States District Court for the Northern District of Florida, involved moral turpitude—as defined in D.C.Code § 11–2503(a).[15] We disagree.

Where we impose disbarment as reciprocal discipline, we may dismiss a criminal conviction matter as moot and forego the moral turpitude inquiry. *See In re Gailliard,* 944 A.2d 1109, 1111–12 (D.C.2008) (citing *In re Novick,* 619 A.2d 514 (D.C. 1993)) (holding that where a discipline proceeding involves both a criminal conviction and a reciprocal discipline matter, the court may impose reciprocal discipline without engaging in a moral turpitude inquiry on the criminal conviction if the resulting discipline would be the same if a moral turpitude inquiry had been conducted). Bar Counsel recommended to the Board that we adopt this approach here. The Board proceeded by recommending reciprocal discipline and dismissal of the criminal conviction matter as moot.

Here, we do not adopt the Board's recommendation that we impose the greater reciprocal discipline of disbarment for "intentional misappropriation," but instead impose discipline that is functionally identical to that imposed in New York and suspend respondent from the practice of law for five years, with his reinstatement contingent upon a showing of fitness. And because respondent's potential reinstatement in the District of Columbia is conditioned upon him demonstrating his fitness to practice law, we dismiss the proceedings stemming from respondent's criminal conviction as moot. *See Gailliard, supra,* 944 A.2d at 1111 (explaining that "if respon-

dent ever seeks reinstatement, he will have to confront then, and the Board will have to resolve, the issue of whether his underlying conviction involved moral turpitude on its facts").

## III. Conclusion

In sum, we decline to adopt the Board's recommendation of disbarment because we agree with respondent that the record does not support a finding of intentional misappropriation. We do adopt the Board's recommendation to dismiss the proceedings stemming from respondent's criminal conviction as moot, however, because respondent's potential reinstatement in the District is conditioned upon him demonstrating his fitness to practice law. Accordingly, it is,

ORDERED that Henry J. Uscinski is suspended from the practice of law in the District of Columbia for the period of five years. Reinstatement in the District of Columbia is conditioned on demonstration of fitness to practice law. The referral for a moral turpitude determination is hereby dismissed as moot.[16]

*So ordered.*

---

15. In the alternative, Bar Counsel—citing *In re Casalino,* 697 A.2d 11 (D.C.1997) and *In re Shorter,* 570 A.2d 760 (D.C.1990) (per curiam)—recommends disbarment for respondent's tax evasion conviction.

16. We direct respondent's attention to the requirements of D.C. Bar R. XI, § 14(g), and their effect on his eligibility for reinstatement.