*Notice:    This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters.  Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-BG-473

IN RE JAMES STEPHEN DELSORDO, RESPONDENT.

A Member of the Bar of the District of Columbia Court of Appeals
(Bar Registration No. 498507)

On Report and Recommendation of the
Board on Professional Responsibility
(DDN-106-19)

(Submitted February 7, 2020                                    Decided April 15, 2020)

*Timothy J. Battle* was on the brief for respondent.

*Julia L. Porter,* Deputy Disciplinary Counsel, and *William R. Ross*, Assistant Disciplinary Counsel, were on the brief for Office of Disciplinary Counsel.

Before THOMPSON, MCLEESE, and DEAHL, *Associate Judges*.

PER CURIAM:    After a hearing, the Virginia State Bar Disciplinary Board (the "VSB Board") suspended respondent James Delsordo from the practice of law in Virginia for a year and a day upon finding that he violated the following Virginia Rules of Professional Conduct: Rule 1.15(b)(5) (disbursing funds of a client without the client's consent), Rule 1.15(c)(1) (failure to maintain cash receipts and disbursement journals, with entries identified by client matter, for trust

account disbursements and transfers), Rule 1.15(d)(3) (failure to conduct required trust account reconciliations), Rule 1.15(d)(4) (failure to fully explain trust account receipts and disbursements in the trust journals and ledgers), and Rule 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). After Disciplinary Counsel notified this court of respondent's discipline on May 29, 2019, we suspended respondent from the District of Columbia Bar on an interim basis pending resolution of this reciprocal-discipline matter and ordered him to show cause why this court should not impose discipline identical to that imposed in Virginia.

In his response to the show-cause order, respondent argued that identical discipline is appropriate and that his suspension should run from the start date of his Virginia suspension (i.e., from April 26, 2019). Disciplinary Counsel counters that the misconduct found in Virginia would result in a substantially different sanction in this jurisdiction and contends that respondent should be disbarred (or, in the alternative, that this court should impose a three-year suspension with a fitness requirement for reinstatement). We agree that the misconduct found by the VSB Board would result in the substantially different sanction of disbarment in this jurisdiction, and we therefore disbar respondent.

## I.

"In reciprocal discipline matters, identical discipline shall be imposed unless the attorney demonstrates, or the court finds on the face of the record, by clear and convincing evidence, that one of the five enumerated exceptions set forth in D.C. Bar R. XI, § 11(c) applies." *In re Ayres-Fountain*, 955 A.2d 157, 159 (D.C. 2008) (per curiam). The parties agree that only one of the enumerated exceptions is implicated: exception (4), "The misconduct established warrants substantially different discipline in the District of Columbia[.]" Rule XI, § 11(c)(4). If that circumstance is satisfied, § 11(c)(4) "permits [this court to impose] a different sanction (either greater or lesser . . .)." *In re Zilberberg*, 612 A.2d 832, 834 (D.C. 1992).

## II.

The VSB Board made findings that included the following: Respondent, one of the two principals of his law firm, was entitled, by agreement with his co-principal, to receive a monthly draw of $15,000. He was also to be paid an additional $25,000 for maintaining the books and records for the firm, but there was no agreement as to when or how he would receive that amount each year. In

2017, it came to light that respondent had been paying personal expenses (for items such as groceries, restaurants, and charges related to his sons' college expenses) from the firm's operating and trust accounts. An experienced bookkeeper who examined the bank accounts of the law firm found that the trust account had a shortfall of $21,074.99, "saw no evidence of any trust account reconciliations having been performed," and found that some deposits were made into the wrong account. A VSB investigator found that no money was actually missing according to the firm's records, but that "by making payments directly to vendors for personal expenses, [r]espondent [had] 'skipped a step.'" The VSB Board found that respondent's partner restored the $21,074.99 to the trust account by transferring funds from the operating account, "which had sufficient funds available for that purpose."

The VSB investigator also found that respondent filed petitions for bankruptcy in which he listed only his monthly draw of $15,000 and not his "considerably higher" total annual income ($298,396; $451,460; and $387,308, for the years involved). Respondent also did not list on the bankruptcy schedules a vehicle that he had purchased for his wife for over $51,000 (using a law firm check).

Regarding the payments he made to himself from the law firm's operating and trust accounts, respondent testified that he had earned and was owed the money and "simply paid himself as the year went along rather than waiting until the end to do a formal reconciliation." Respondent admitted that he did not perform the trust account reconciliations required by the Virginia Rules of Professional Conduct, but testified that he "did . . . calculations in his head and . . . knew how much he was entitled to receive." Regarding bankruptcy forms, he testified that he did not understand all the questions on the forms and that he disclosed previously underreported income to the IRS after VSB's investigation began and thereafter entered a payment plan to pay additional taxes.

The VSB Board found that respondent violated Virginia Rule 1.15(b)(5) by disbursing trust funds to himself to pay his sons' college expenses; violated Rule 1.15(c) in that his transfers and payments to himself and others "did not reflect which client's funds were being transferred"; violated Rule 1.15(d)(3) by failing to perform reconciliations; violated Rule 1.15(d)(4) by withdrawing client funds without explanation; and violated Rule 8.4(c) through making undisclosed and unauthorized withdrawals from the law firm's accounts that contravened the financial arrangement with his partner, making questionable reports of assets on his personal bankruptcy schedules, and grossly understating his annual income to

the IRS. The VSB Board also noted that respondent had a disciplinary history: a private reprimand on four separate matters from 2004 and a public admonition in 2012 on two matters, all of which dealt with Rule 1.15 trust account violations.

As a sanction, the VSB Board suspended respondent for a period of a year and a day, effective April 26, 2019, a sanction that requires that he take and pass the Multistate Professional Responsibility Examination before reinstatement. In addition, the VSB Board required respondent to pay all costs assessed in the disciplinary proceeding.

## III.

Disciplinary Counsel urges this court to reject a one-year-and-a-day suspension as reciprocal discipline and recommends instead that respondent be disbarred for having "intentionally or recklessly misappropriated entrusted funds," "fraudulently concealed assets from creditors in multiple bankruptcy proceedings," and "concealed assets and dishonestly understated his income from the IRS in an effort to evade income taxes[.]" Disciplinary Counsel asserts that the VSB Board's findings are to the effect that respondent was "indiscriminately treating entrusted funds as his own by improperly taking funds based on 'calculations in his head[.]'"

We have said that "when a greater sanction is sought in the District of Columbia, the record must affirmatively show that a greater sanction is warranted[.]" *Zilberberg*, 612 A.2d at 835. We are satisfied that this standard is met here. In finding that respondent disbursed trust account funds to himself or to pay his sons' college expenses, did so without a careful accounting of which clients' funds were being transferred, and caused a shortfall in the trust account, the VSB Board effectively found that respondent misappropriated entrusted funds. *See In re Ahaghotu*, 75 A.3d 251, 256 (D.C. 2013) ("Misappropriation happens when the balance in the attorney's trust account falls below the amount due the client[.]") (brackets and internal quotation marks omitted). It also effectively found that he did so intentionally or recklessly. *See In re Gray*, No. 18-BG-818, 2020 D.C. App. LEXIS 51, *9–10, 12 (D.C. 2020) (per curiam) (concluding, notwithstanding the attorney's credited testimony that he "believed he had a reasonably accurate understanding of what was in his trust account" and "believed he had earned (and therefore owned) any funds he withdrew from the trust account for his own use[,]" that where "his assessment of whose money was in the account was not accurate and . . . led him to misappropriate money held in trust for two clients[,]" the misappropriation was reckless and warranted disbarment even though the misappropriation did not involve dishonesty) (brackets and internal

quotation marks omitted); *In re Abbey*, 169 A.3d 865, 873 (D.C. 2017) (concluding that where attorney did not reconcile her trust account records and failed to track proceeds relating to individual clients, her conduct was reckless rather than negligent, because it did not "reveal a good-faith, genuine, or sincere but erroneous belief that entrusted funds were properly safeguarded"). Thus, respondent was found to have committed conduct that would require disbarment in our jurisdiction. *See In re Addams*, 579 A.2d 190, 191 (D.C. 1990) ("We now reaffirm that in virtually all cases of misappropriation, disbarment will be the only appropriate action"; "a lesser sanction [i]s appropriate only in extraordinary circumstances.").

Respondent emphasizes that there was no need to use the trust account for many of the law firm's (primarily) government-contract clients, who did not make any advance payments to the law firm. He also emphasizes that the law firm's trust account "sometimes had money for only a few days before it was properly and accurately transferred to the operating account."[1] In addition, we are mindful

---

[1] In addition, regarding dishonesty, respondent notes that the VSB Board found that a charged violation of Rule 3.3(a)(1) of the Virginia Rules of Professional Conduct (pertaining to making a false statement of fact or law to a tribunal) based on representations in his bankruptcy petitions had not been proven by clear and convincing evidence. We need not address the VSB Board's findings with respect to either the bankruptcy petitions or respondent's representations to the IRS, because respondent's trust account violations are sufficient to warrant "the

(continued…)

of the VSB Board's finding that funds missing from the trust account were restored to it through a transfer from the law firm's operating account, which "had sufficient funds available for that purpose."[2]  However, these points do not change our conclusion, because our case law does not make the appropriateness of disbarment as a sanction dependent on factors such as the extensiveness of the law firm's use of its trust account, the size of the trust account, the amount of improper disbursements from it, and the duration of the clients' deprivation of funds.  *See In re Robinson*, 583 A.2d 691, 692 (D.C. 1990) (per curiam) (concluding that "the relatively small amount of money, the relatively short period of time during which the client was denied the misappropriated funds, [and] the absence of financial harm to the client" did not overcome the presumption of disbarment in our jurisdiction).

---

(…continued)
most severe sanction of disbarment[.]"  *In re Pennington*, 921 A.2d 135, 141 (D.C. 2007).

[2]  We are also mindful of the testimony, recounted and apparently credited by the VSB Board, that "some deposits were made into the wrong account," which perhaps suggests the possibility that some of the funds in the trust account were not client funds.  However, respondent has not suggested that there was an "infirmity of proof" to support the VSB Board's finding that he disbursed funds in violation of Rule 1.15(b)(5).

Finally, we agree with Disciplinary Counsel that, for purposes of determining when respondent may seek reinstatement, the sanction we impose may not be made effective any earlier than the date on which respondent submitted the affidavit required by D.C. Bar Rule XI, § 14. *See* D.C. Bar Rule XI, § 16(c).

It is therefore ORDERED that respondent is disbarred from the practice of law in the District of Columbia. For purposes of reinstatement, his disbarment shall be deemed to run from July 23, 2019, the date on which he filed his § 14(g) affidavit.

*So ordered.*